Thomas J. DAILEY and Ann Dailey, his wife, Plaintiffs,

v.

FIRST PEOPLES BANK OF NEW JERSEY, the Estate of Joseph Tuso, Deceased, Sheldon C. Schulman, and Chelsea Title & Guaranty Company, Inc., a New Jersey Corporation, Defendants.

FIRST PEOPLES BANK OF NEW JERSEY, Third-Party Plaintiff,

v.

Ronald L. GLICK, Trustee of the Estate of J. Martin Cook and Sue S. Cook, in Bankruptcy, and of the Estate of Peter Romeo, in Bankruptcy, and Frank T. Brigio, formerly a partnership, t/a Silver Run Farms, Robert F. Butler, Esq., and Tuso, Gruccio, Pepper, Buonadonna, Giovinazzi & Butler, a Professional Corporation, Third-Party Defendants.

Civ. A. No. 86–3527.

United States District Court, D. New Jersey.

July 1, 1987.

Carol Ann Slocum, Ronald L. Glick, Cinnaminson, N.J., for third-party defendant Ronald L. Glick, Trustee.

Darrell Fineman, Capizola, Fineman & Kutner, P.C., Vineland, N.J., for plaintiffs.

## OPINION

GERRY, District Judge.

This matter began as an action in state court concerning breach of contract and allegation of fraud in a real estate transaction. Defendants First Peoples Bank of New Jersey and others then filed a third-party complaint against a number of individuals, two of whom had earlier sought protection from creditors under bankruptcy law. Ronald Glick, trustee for the estates of these defendants then sought and re-

ceived removal of the action from state court to this court. Glick now moves for referral of this action to the Bankruptcy Court, Judge William Gindin, before whom the bankrupt third-party defendants Cook and Romeo have their bankruptcy petitions.

The factual background of the underlying action is not complicated. In 1981, the plaintiffs bought from the defendant bought from the defendant bank several parcels of property located in Cumberland County. The plaintiffs allege that during the negotiations over this land purchase agents and employees of the defendant bank led them to believe that one parcel they were buying contained 75 acres. The purchase price ($90,000) was calculated on the assumption that 75 acres were being exchanged. (75 acres at $1,200/acre.) Shortly after closing, the plaintiffs discovered tht the land conveyed to them consisted of but 50 acres. Negotiations to correct this disparity failed, and plaintiffs filed this action, *Dailey v. First Peoples Bank* in New Jersey Superior Court, Law Division, seeking, *inter alia,* damages against the bank and its various agents.

By way of defense, First Peoples Bank denied intentionally misinforming plaintiffs as to the amount of land in the disputed parcel. The bank contended that its title was derived from the foreclosure of a mortgage loan taken out by the previous owners of the property, third-party defendants Cook, Romeo and Brigio, individually and trading as a partnership called Silver Run Farms. The bank further claimed that any deficiency in the quantity of land conveyed to plaintiffs resulted from an error in the serial transposition of the legal description of the land contained in the deeds and mortgages running from Cook, Brigio and Romeo to the plaintiffs. Therefore, defendants filed a third-party complaint against Cook, Brigio and Romeo seeking the reformation of all documents in plaintiffs' chain of title and the divesting of Cook, Brigio and Romeo of any claim they might assert over land in the disputed parcel. After removal to this court, trustee Glick filed the present motion to refer.

Under 28 U.S.C. § 157(a), this court has the power to refer to the bankruptcy court

> any or all cases under Title 11 [11 U.S.C. §§ 101 *et seq.,* the Bankruptcy Code] and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11....

Our power to refer is discretionary under the statute; however, by standing order filed July 23, 1984, this court generally refers to the bankruptcy court *all* cases meeting the § 157(a) description stated above. Such referrals are commonly accomplished without opposition; however, we note that both the statute, 28 U.S.C. § 157(d), and the standing order grant us the power "to withdraw [from the bankruptcy court], in whole or in part, any case or proceeding referred above, on its own motion or on timely motion of any party, for cause shown." (Standing Order at (2).) Thus, it is appropriate for us at this time to consider whether we ought to refer this case to the bankruptcy court. For the reasons that follow, we will refer this case to the United States Bankruptcy Court, Trenton vicinage.

Plaintiffs' opposition to referral in this instance can be stated concisely: referral to the bankruptcy court would deny the plaintiffs their 7th Amendment right to trial by jury. Plaintiffs reason that their claim seeks relief—money damages—historically legal in nature. Thus, at common law they would have been entitled to a trial by jury on all claims. The fact that the third-party complaint seeks relief historically considered to be equitable—the reformation of documents—does not alter their 7th Amendment entitlement. *Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).

Plaintiffs next argue that the bankruptcy court has no authority under the Bankruptcy Code to conduct a jury trial in this matter. Further, they suggest that, even were there clear statutory authority for a jury trial, such authority might be unconstitutional under *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,*

458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), where the Supreme Court found unconstitutional certain provisions of the Bankruptcy Code of 1978 because that Code granted to the bankruptcy court, the judges of which lack life tenure and protection against salary diminution, Article III judicial power. Thus, plaintiffs argue, referral to the bankruptcy court will result in the denial of the right to trial by jury.

■ Before we reach the arguments raised by the plaintiffs, we must answer the threshold question of whether the plaintiffs do indeed have the right to the jury trial they claim. It is true, of course, that parties seeking relief legal in nature are entitled to a jury trial as a matter of right, and that the presence of claims to equitable relief does not generally alter that right. As Justice Black observed in *Dairy Queen v. Wood, supra,*

> The holding in *Beacon Theatres* was that where both legal and equitable issues are presented in a single case, 'only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims.' That holding, of course, applies whether the trial judge chooses to characterize the legal issues presented as incidental to the equitable issues or not.

*Dairy Queen,* 369 U.S. at 472–473, 82 S.Ct. at 897. However, in *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), the high court also held, distinguishing *Dairy Queen* and *Beacon Theatres,* that

> ... in cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, *as belonging to the bankruptcy proceedings, they become cases over which the bankruptcy court, which acts as a court of equity, exercises exclusive control. Thus a claim of debt or damages against the bankrupt is investigated by chancery methods.*

(Emphasis added.) *Katchen v. Landy,* 382 U.S. at 337, 86 S.Ct. at 477, *quoting Barton v. Barbour,* 104 U.S. (14 Otto) 126, 133–134, 26 L.Ed. 672 (1881). In particular, legal claims against a bankrupt which become equitable under the jurisdiction of the bankruptcy court are those which claim a share of the "res," the bankrupt's estate, over which the bankruptcy court has control. As the *Katchen* court stated:

> The Bankruptcy Act, passed pursuant to the power given to Congress by Article I, § 8, of the Constitution to establish uniform laws on the subject of bankruptcy, *converts the creditor's legal claim into an equitable claim to a pro rata share of the res, Gardner v. New Jersey,* 329 U.S. 565, 573–574 [67, S.Ct. 467, 471–472, 91 L.Ed. 504 (1947)].

*Katchen,* 382 U.S. at 336, 86 S.Ct. at 476. (Emphasis added.)

We find that the *Katchen* decision does not affect plaintiffs' right to a jury trial in this matter. In particular, we note that the plaintiffs have asserted no claim *at all* to any part of the bankrupt's estate. Rather, they claim damages for breach of contract against the defendant bank, not against the estate of the bankrupts. Indeed, we note that the third-party complaint does not state a claim for some share of the res. Thus, we find that plaintiffs' claim does not fall into that class of claims which *Katchen* holds are converted from legal to equitable under the jurisdiction of the bankruptcy court. Plaintiffs do have a 7th Amendment right to a trial by jury.

We turn now to the first question plaintiffs raise—whether the bankruptcy court is statutorily authorized to conduct trials by jury. This question is now the subject of great controversy and confusion, which can be summed up by one commentator's observation that "[t]he present status of jury trials in bankruptcy courts is in a state of disarray." Dugan, "Jury Trials in Bankruptcy Courts," Norton Bankruptcy Law Advisor, Jan. 1986, at 3.

■ On first impression, a reader familiar with the Supreme Court's decision in *Katchen* ("the bankruptcy court sits as a court of equity") might think that the law

was crystal clear that bankruptcy courts lack the authority to conduct jury trials. However, in 1973, the Judicial Conference approved bankruptcy rules expressly authorizing jury trials in bankruptcy courts. Even then, however, the statute remained silent on the issue of jury trials. Finally, in the Bankruptcy Reform Act of 1978, Congress authorized, though unspecifically, the holding of jury trials in bankruptcy court. That statute, codified at 28 U.S.C. § 1480, stated:

> ... this chapter and Title 11 do not affect any right to trial by jury, in a case under Title 11 or in a proceeding arising under Title 11 or arising in or related to a case under Title 11....

This provision, generally thought to confer upon the bankruptcy court the power to hold jury trials, was called into question by the *Marathon* decision. *See generally In re Gaildeen Industries, Inc.*, 59 B.R. 402 (N.D.Cal.1986). *Marathon* found unconstitutional the grant to bankruptcy courts of "most, if not all, of the essential attributes of the judicial power," 458 U.S. at 87, 102 S.Ct. at 2880, but did not specifically void the power to hear cases tried by jury. In response to *Marathon*, the Judicial Conference promulgated the Emergency Rules of Bankruptcy Procedure, which prohibited the conducting of jury trials by bankruptcy courts.

Many of the Emergency Rules became part of the Bankruptcy Code when Congress passed the Bankruptcy Amendments and Federal Judgeship Act of 1984. We note, however, that Congress *did not* enact the Emergency Rules' prohibition on jury trials. The 1984 legislation, like so much earlier bankruptcy legislation, barely speaks to the authority of bankruptcy courts to hold jury trials. The one arguably relevant portion of that legislation, 28 U.S.C. § 1411, provides:

> (a) Except as provided in subsection (b) of this section, this chapter and Title 11 do not affect any right of trial by jury that an individual has under applicable non-bankruptcy law with regard to a personal injury or wrongful death tort claim.

This section, although addressed not to the authority of a court to hold a jury trial but to a litigant's right to such a trial, could be interpreted to grant to bankruptcy courts the power to empanel juries only in the tort cases specified in § 1411.

We decline to adopt this interpretation. Had Congress intended to abrogate the bankruptcy court's authority to empanel juries, it would have enacted the Emergency Rule to accomplish that. Further, at the time Congress passed the 1984 Amendments, it knew that Bankruptcy Rule 9015, promulgated by the Judicial Conference and adopted by the Supreme Court, had replaced the Emergency Rule and apparently returned to the bankruptcy courts the discretion to hear jury cases. Rule 9015 states, in pertinent part:

> (a) Trial by Jury
>
> Issues triable of right by jury shall, if timely demanded, be by jury....

We do not, of course, find that Rule 9015 bestowed on the court the statutory authority to hear jury cases. Rather, we suggest that, acting with Rule 9015 in the background, Congress would have made explicit its desire to abrogate the authority to hear jury cases had it intended to do so. We note that in adopting the above analysis we join other courts, *e.g., Lombard-Wall, Inc. v. New York City Housing Development Corp.*, 48 B.R. 986, 13 C.B.C.2d 161 (S.D.N.Y.1985); *Macon Prestressed Concrete Co. v. Duke*, 46 B.R. 727 (M.D.Ga.1985), and commentators, *e.g.*, 1 Collier Bankruptcy Manual ¶ 3.01. Further, numerous courts outside this district (we can find no reported decisions in the District of New Jersey or by the United States Court of Appeals for the Third Circuit) have concluded that bankruptcy courts have power to conduct jury trials. *In re Gaildeen Industries, supra; In re Boss-Linco Lines, Inc.*, 55 B.R. 299 (W.D.N.Y.1985); *In re George Woloch Co.*, 49 B.R. 68, 69–70 (E.D.Pa. 1985). In addition, as the *Gaildeen* court suggests, several provisions of the Bankruptcy Code suggest that Congress intended bankruptcy judges to conduct jury trials in certain instances. Section 157(b) (28 U.S.C.) authorizes bankruptcy judges to "hear and determine all cases under Title

11 and all core proceedings arising under Title 11," and § 157(b) also permits the bankruptcy courts to enter final orders and judgments in what it finds to be "core proceedings." (We will return to the important issue of "core proceedings" below.) As the *Gaildeen* court concluded, "This broad grant of jurisdiction would seem to include those cases in which a right to jury trial exists." *Id.* at 406.

■ As to the constitutional authority of bankruptcy courts, after *Marathon*, to hear jury cases, we find nothing in that opinion which holds *per se* unconstitutional the hearing of jury cases by bankruptcy judges. *Marathon* held unconstitutional 28 U.S.C. § 1471(c)'s *general* grant of Article III authority to bankruptcy judges. (For instance, § 1471(c) enabled bankruptcy judges to hear and enter final orders regarding issues not central to bankruptcy matters, in particular those issues involving exclusively state law which were not found to be "core" bankruptcy proceedings.) The *Marathon* court listed a number of powers exercised by the bankruptcy court which, *in the aggregate,* constituted an impermissible delegation of judicial power. *Marathon,* 458 U.S. at 85, 102 S.Ct. at 2878. Also, we note that when the Supreme Court adopted Rule 9015, which it did after *Marathon* came down, it impliedly affirmed the constitutional validity of jury trial in bankruptcy courts. *See Gaildeen* at 407; *In re O.P.M. Leasing Svcs., Inc.,* 48 B.R. 824, 12 C.B.C.2d 1322 (S.D.N. Y.1985); *Macon Prestressed, supra.* For these reasons, we find constitutional the bankruptcy court's authority to conduct jury trials, at least regarding "core" issues.

■ Having found that the bankruptcy court possesses both statutory and constitutional power to hold jury trials, we must discuss one crucial limitation of this authority. This limitation concerns the disposition of those matters bankruptcy judges find are not "core proceedings" under 28 U.S.C. § 157(b)(2). There are 15 categories of "core proceedings" under § 157(b)(2), ranging from "(A) matters concerning the administration of the estate," to "(K) determinations of the validity, extent and priori-

ty of liens" and "(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury, tort or wrongful death claims." Proceedings not found to be core proceedings are deemed "otherwise related to cases under Title 11." Bankruptcy judges lack the power to enter final orders or judgments as to "otherwise related" proceedings without the consent of the parties. 28 U.S.C. § 157(c)(1) and (2). Indeed, without consent of the parties, bankruptcy judges may enter only *proposed* findings of fact and conclusions of law to the district court as to "otherwise related" issues. § 157(c)(1). It therefore appears that Congress contemplated no role for a jury in "otherwise related" proceedings; would a jury's findings be mere proposals? If so, this would be a complete departure from the jury's historical duty and authority. Further, as we suggest briefly above, there may be constitutional problems with jury trials of "otherwise related" issues. Thus, we find that Congress has not authorized jury trials in "otherwise related" bankruptcy proceedings. *In re Arnold Print Works, Inc.,* 54 B.R. 562, 13 B.C.D. 883 (Bkrtcy.D.Mass.1985); *see generally* 1 Collier Bankruptcy Manual, ¶ 3.01, *supra.* The ability, then, of the bankruptcy court to vindicate the plaintiffs' right to a jury trial depends on whether that action constitutes a "core proceeding."

■ We will not determine whether this matter constitutes a core proceeding under § 157(c). The parties have not briefed this issue, nor do we have before us the full record of the bankruptcy proceedings essential to making such a decision. Also, the bankruptcy code supposes that determinations of what constitute core issues will be left to the bankruptcy court, which after all is better equipped and experienced to make such decisions. *See* 28 U.S.C. § 157(b)(3). For these reasons, we leave to the bankruptcy court the determination of whether this matter constitutes a core issue. Therefore, we grant this motion to refer with the following directions: should the bankruptcy court decide that this matter does constitute a core issue, we

direct that court to retain jurisdiction and dispose of this matter consistent with the findings of this opinion. If the bankruptcy court decides that this matter is not a core proceeding, or that the plaintiffs' claim *by itself* (and severed from the third-party claim) does not constitute a core proceeding, we direct that court to refer the issues so found back to this court, so that we may be certain to preserve the plaintiffs' 7th Amendment entitlement. We make these directions pursuant to our power to withdraw from the bankruptcy court, *"in whole or in part,* any case or proceeding referred under this section ...," 28 U.S.C. § 157(d).

The accompanying order has been entered.