**In re SKIL–AIRE CORP., Debtor.**

**David P. MICHAELS, Trustee for the Estate of Skil–Aire Corp., Plaintiff,**

**v.**

**John W. LOMAX, H. John Kazmar and John E. Sheehan, Defendants.**

**Bankruptcy No. 89–02917.**
**Adv. No. 91–3090 TS.**

United States Bankruptcy Court, D. New Jersey.

July 29, 1992.

Dale E. Barney, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, N.J., for plaintiff.

William C. Slattery, Norris, McLaughlin & Marcus, Somerville, N.J., for defendant H. John Kazmar.

Peter J. Broege, Wood, Broege, Neumann & Fischer, Manasquan, N.J., for defendant John E. Sheehan.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

■ On February 8, 1991 David P. Michaels, trustee of the bankruptcy estate of Skil–Aire Corp. ("the trustee"), filed a complaint commencing this adversary proceeding to avoid fraudulent transfers under section 544(b) of title 11, United States Code ("Bankruptcy Code" or "Code"). Defendants H. John Kazmar ("Kazmar") and John E. Sheehan ("Sheehan") filed answers denying liability, and Kazmar demanded a jury trial. On May 5, 1992 this court held an initial pretrial conference at which three issues were raised which must be resolved before trial.[1] These issues are first, whether this is a core or noncore proceeding; second, whether Kazmar is entitled to a jury trial; and third, if Kazmar is entitled to a jury trial, whether it can be conducted in the bankruptcy court. The court concludes that this is a core proceeding, Kazmar is entitled to a jury trial, and the bankruptcy court has authority to conduct jury trials in core proceedings.

This court has jurisdiction under 28 U.S.C. §§ 1334(b) and 151. This is a core proceeding under 28 U.S.C. § 157(b)(2)(H). This shall constitute the court's findings of fact and conclusions of law.

## I. FACTS

Defendants John W. Lomax ("Lomax"), Sheehan and Kazmar were stockholders, directors and officers of the debtor Skil–Aire Corporation, which was in the business of assembling air conditioning units for wholesale to distributors and the retail sale to individual commercial users. Kazmar, Sheehan and Lomax signed separate agreements on December 26, 1985, January 15, 1986 and March 17, 1987, respectively, to sell their stock in the debtor to John P. Ambrose, Jr. ("Ambrose"). The trustee alleges that Kazmar received $66,667 and Sheehan received $49,000 from the debtor to redeem their stock. The trustee argues that these were fraudulent transfers, and that they may therefore be recovered under Bankruptcy Code sections 544(b), 550 and 551 and the Uniform Fraudulent Transfer Act, N.J.Stat.Ann. 25:2–20 *et seq.* ("the Fraudulent Transfer Act"). Sheehan and Kazmar deny liability, and Kazmar has demanded a jury trial. Lomax has filed a bankruptcy petition, so the automatic stay of Code section 362(a) prevents further prosecution of this adversary proceeding against him at this time.

## II. CORE/NONCORE

■ The trustee's cause of action against Kazmar is based upon Bankruptcy Code section 544(b), which authorizes a trustee to avoid (i.e. recover) any transfer of an interest of the debtor in property that is voidable under applicable law by a creditor holding an allowed unsecured claim. In this case, creditors of the debtor could assert such claims against Kazmar under the Fraudulent Transfer Act. Since creditors could assert such claims against Kazmar under the Fraudulent Transfer Act, the trustee can do so under Code section 544(b).

28 U.S.C. § 157(b)(2)(H) expressly states that proceedings to determine, avoid or recover fraudulent conveyances are core proceedings. Bankruptcy judges are authorized to enter final orders and judgments in all core proceedings arising under title 11 or arising in title 11 cases. Kazmar argues

---

1. While it would have been customary procedure for a motion to be filed requesting a ruling on these issues, Fed.R.Bankr.P. 7016 authorizes such issues to be resolved at a pretrial conference. Neither party expressed a desire to proceed by motion, and the court concludes that a formal motion is unnecessary here. Fed. R.Bankr.P. 1001 states that the rules shall be construed to secure the just, speedy and inexpensive determination of every case and proceeding. *See also* 28 U.S.C. § 157(b)(3), which authorizes bankruptcy judges to determine whether a proceeding is core on their own motion.

that although this may be a core proceeding, it does not arise under title 11 or arise in title 11 cases within the meaning of 28 U.S.C. §§ 157(b)(1) and 1334(b). Kazmar also asserts that the bankruptcy court cannot enter a final judgment, and that this proceeding should therefore be referred back to the district court. This argument is without merit.

■ There are three types of subject matter jurisdiction under 28 U.S.C. § 1334(b) over proceedings within bankruptcy cases: those which "arise under" the Bankruptcy Code, those which "arise in" bankruptcy cases, and those which are "related to" bankruptcy cases. Proceedings which "arise under" the Code and which "arise in" bankruptcy cases are core proceedings. 28 U.S.C. § 157(b)(1); *Matter of Wood*, 825 F.2d 90, 96 (5th Cir.1987). There is no category of core proceedings other than those which arise under the Code or arise in bankruptcy cases. Proceedings which are only "related to" bankruptcy cases are noncore proceedings. 28 U.S.C. § 157(c)(1); *Matter of Wood, supra*, 825 F.2d at 97. In noncore proceedings the bankruptcy court submits proposed findings of fact and conclusions of law to the district court under 28 U.S.C. § 157(c)(1), unless the parties consent to entry of final judgment by the bankruptcy court under 28 U.S.C. § 157(c)(2).

[F]or purposes of § 157(b)(2)(H), state fraudulent conveyance proceedings are distinguishable from federal fraudulent conveyance proceedings only by the fact that they are of state origin. Congress has explicitly found that this is a distinction which, standing alone, cannot serve as the basis for distinguishing core from non-core proceedings: 'A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.'

*Duck v. Munn (In re Mankin)*, 823 F.2d 1296, 1300–01 (9th Cir.1987), *cert denied* 485 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988) (quoting 28 U.S.C. § 157(b)(3)).

The trustee's cause of action against Kazmar under Bankruptcy Code section 544(b) based on the Fraudulent Transfer Act is a core proceeding in which this court can enter a final judgment pursuant to 28 U.S.C. § 157(b)(1).

## III. RIGHT TO A JURY TRIAL

■ Kazmar has demanded a jury trial, and the trustee properly concedes that he is entitled to one. In *Granfinanciera S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the Supreme Court held that under the Seventh Amendment

a person who has not submitted a claim against a bankruptcy estate has a right to a jury trial when sued by the trustee in bankruptcy to recover an allegedly fraudulent monetary transfer ... notwithstanding Congress' designation of fraudulent conveyance actions as 'core proceedings' in 28 U.S.C. § 157(b)(2)(H).

492 U.S. at 36, 109 S.Ct. at 2787.

Since Kazmar has not filed a claim against the estate, he is entitled to a jury trial in this adversary proceeding.

## IV. AUTHORITY OF BANKRUPTCY COURT TO CONDUCT JURY TRIAL

### A. EXPLICIT STATUTORY AUTHORITY

The only section of title 28 regarding bankruptcy jurisdiction which explicitly addresses jury trials in bankruptcy cases is 28 U.S.C. § 1411, which states:

(a) Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim.

(b) The district court may order the issues arising under section 303 of title 11 to be tried without a jury.

The Supreme Court has noted that section 1411 is "notoriously ambiguous." *Granfinanciera*, 492 U.S. at 40 n. 3, 109 S.Ct. at 2790 n. 3. Subsection (a) says in essence that nothing in titles 28 or 11 affects any right to a jury trial under nonbankruptcy law in personal injury or wrongful death claims. This might be construed as meaning that there is no right to

jury trial in bankruptcy regarding other matters, under the maxim *expressio unius est exclusio alterius.* However, it has not been construed that way. *See, id. See also Ben Cooper, Inc. v. The Ins. Co. of the State of Penn. (In re Ben Cooper, Inc.),* 896 F.2d 1394, 1402 (2d Cir.) *cert. granted,* — U.S. ——, 110 S.Ct. 3269, 111 L.Ed.2d 779 *vacated and remanded,* — U.S. ——, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated* 924 F.2d 36, *cert. denied,* — U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991).

Moreover, as *Ben Cooper* noted, "[§ 1411(a)] does not even make clear whether jury trials are afforded for other actions, let alone the proper forum for those trials." *Ben Cooper, supra,* 896 F.2d at 1402.

As for § 1411(b), it was merely intended to confirm that the prior Bankruptcy Act's authorization for jury demands in involuntary bankruptcy cases was not continued when the Bankruptcy Code was enacted. Gibson, *Jury Trials in Bankruptcy: Obeying the Commands of Article III and the Seventh Amendment,* 72 Minn.L.Rev. 967, 972–73 (1988).

It is therefore clear that there is no explicit statutory authority for the bankruptcy court to conduct jury trials.

## B. IMPLICIT STATUTORY AUTHORITY

On two recent occasions the Supreme Court has declined to rule on whether the bankruptcy court has implicit statutory authority to conduct jury trials, and whether such authority is constitutional. *See Granfinanciera, supra,* 492 U.S. at 64, 109 S.Ct. at 2802 and *Ben Cooper, supra.* It has therefore been left to the lower courts to decide those issues. In *Ben Cooper,* the Court of Appeals for the Second Circuit found implicit statutory authority in 28 U.S.C. § 151, which states that "[e]ach bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit or proceeding," and in 28 U.S.C. § 157(b), which authorizes bankruptcy judges to conduct trials and issue final orders in core proceedings. *Ben Cooper, supra,* 896 F.2d at 1402.

One of the cases on which Ben Cooper relied was *Dailey v. First Peoples Bank of New Jersey,* 76 B.R. 963 (D.N.J.1987). In that case the court noted that after the Supreme Court found certain jurisdictional provisions of the Bankruptcy Code of 1978 unconstitutional in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Judicial Conference promulgated the Emergency Rules of Bankruptcy Procedure, which, *inter alia,* prohibited the conducting of jury trials by bankruptcy courts. *Dailey, supra,* 76 B.R. at 967.

> Many of the Emergency Rules became part of the Bankruptcy Code when Congress passed the Bankruptcy Amendments and Federal Judgeship Act of 1984. We note, however, that Congress *did not* enact the Emergency Rules prohibition on jury trials.... Had Congress intended to abrogate the bankruptcy court's authority to empanel juries, it would have enacted the Emergency Rule to accomplish that.

*Id.* (emphasis in original).

Most courts which have considered the issue have held that bankruptcy courts may conduct jury trials in core proceedings. Gibson, *supra,* 72 Minn.L.Rev. at 1027–34 (citing cases). In *Ben Cooper,* the Second Circuit agreed with this majority view. The three courts of appeals which have considered the issue after the Second Circuit in *Ben Cooper* have, however, held that the bankruptcy court has no such authority.

In *In re United Missouri Bank of Kansas City, N.A.,* 901 F.2d 1449 (8th Cir.1990), the Eighth Circuit held that for a power to be implied from legislation, " 'The power to be implied * * * must be practically indispensable and essential in order to execute the power actually conferred.' " *Id.* at 1456 (quoting 2A Sutherland Stat. Const. § 55.03). · Reasoning that the power to conduct jury trials is not indispensable to bankruptcy judges' ability to exercise the authority conferred by the 1984 Act, the Eighth Circuit found no implied statutory authority. *Id.*

The difficulty with this syllogism is that the major premise is highly debatable. First of all, Sutherland on Statutory Construction is secondary authority. Secondly, the passage from Sutherland quoted in *United Missouri Bank* was in turn quoted from *Carter v. Clausen*, 263 Ark. 344, 565 S.W.2d 17 (1978), which cannot exactly be described as the last word on construction by federal courts of federal statutes. Lastly, the quotation from Sutherland was taken out of context. The first sentence of the section in question in Sutherland states that "[t]he usual standard used to interpret a statute by implication or inference is used to determine if the statute embraces such consequential applications and effects as are necessary, essential, natural *or* proper." *Id.* (emphasis added). Sutherland further states that "[w]here a statute confers powers or duties in general terms, all powers and duties incidental and necessary to make such legislation effective are included by implication." Sutherland, *supra,* at § 55.04. The consolidation of bankruptcy litigation in the bankruptcy court was one of Congress' goals in enacting the Bankruptcy Reform Act of 1978. Gibson, *supra,* 72 Minn.L.Rev. at 1027 n. 288. It follows that construing the provisions of title 28 as authorizing jury trials in bankruptcy court is necessary, natural or proper, in the language of Sutherland, even if it is not essential.

*United Missouri Bank* also concluded that Congress apparently did not consider the need to provide jury trial authority when it enacted the 1984 Act. That conclusion is, however, incorrect for the reasons stated in *Dailey v. First Peoples Bank of New Jersey, supra.* While *United Missouri Bank* is of course correct that the courts must determine the intent of Congress when construing a federal statute, *id.* at 1453, Congressional intent can sometimes be gleaned from what a statute *does not* say. If Congress had intended to prohibit jury trials in the bankruptcy courts in the 1984 Act, all it had to do was enact the Emergency Rules' provision to that effect. Congress, however, conspicuously refrained from enacting that prohibition when it enacted many of the Emergency Rules in the 1984 Act. "It thus seems more likely that Congress failed to enact a provision clearly stating the bankruptcy judges' authority to conduct jury trials because of its uncertainty about applicable constitutional requirements." Gibson, *supra,* 72 Minn.L.Rev. at 1028 n. 289. In view of Congress' stated goal in enacting the Code of consolidating bankruptcy litigation in the bankruptcy court, it was probably Congress' intention in enacting the 1984 Act to authorize the bankruptcy courts to conduct jury trials in bankruptcy cases if it is constitutional to do so. Congress did express a general intention in enacting the 1984 Act to grant the bankruptcy court jurisdiction over bankruptcy-related matters to the maximum extent possible under the Constitution. *Ben Cooper, supra,* 896 F.2d at 1398. The fact that the 1984 Act does not explicitly address the issue of bankruptcy court authority to conduct jury trials is undoubtedly due to a desire by Congress to avoid any necessity to modify the jurisdictional provisions of title 28 any further. In this manner, Congress left it for the courts to decide whether it is constitutional for the bankruptcy courts to conduct jury trials.

*In re Kaiser Steel Corp.,* 911 F.2d 380 (10th Cir.1990) and *In re Baker & Getty Financial Services, Inc.,* 954 F.2d 1169 (6th Cir.1992) followed *United Missouri Bank* in holding that the bankruptcy courts lack authority to conduct jury trials. Since the courts in those cases substantially relied on the reasoning of *United Missouri Bank,* this court finds their reasoning equally unpersuasive for the same reasons set forth above.

So Congress left the door open in the 1984 Act for bankruptcy courts to conduct jury trials, but left it to the courts to decide if it is constitutional to do so. The Supreme Court has, however, gone to great lengths in *Granfinanciera* and *Ben Cooper* to avoid deciding this question, thereby leaving it to the lower courts to decide. We know this much from the procedural history of *Ben Cooper:* the Supreme Court was aware that the bankruptcy courts are going to be conducting jury trials in at least one circuit, but was not sufficiently disturbed by that fact to decide for itself

whether the bankruptcy courts are authorized to do so. It follows that for now, at least, it has been left by Congress and the Supreme Court to the courts of each circuit to decide the issue.

This court holds, following *Ben Cooper* and *Dailey v. First Peoples Bank,* that the bankruptcy court has implied statutory authority to conduct jury trials in core proceedings. *See also In re West Electronics, Inc.,* 128 B.R. 900 (Bankr.D.N.J.1991).

## V. THE SEVENTH AMENDMENT'S REQUIREMENTS

The Seventh Amendment provides in pertinent part that "no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of common law." U.S. Const. amend. VII. In *Beard v. Braunstein,* 914 F.2d 434 (3d Cir.1990), the Court of Appeals for the Third Circuit held that in nonconsensual, noncore proceedings, "the Seventh Amendment's limitations on the review of jury findings are not compatible with [28 U.S.C.] section 157(c)(1), which requires that any contested finding by the bankruptcy courts must be reviewed de novo." *Id.* at 443. Therefore the bankruptcy court cannot conduct a jury trial in a nonconsensual, noncore proceeding. In *Ben Cooper,* however, the Court of Appeals for the Second Circuit held that "[s]ince the jury verdict in a core proceeding is subject only to the traditional standards of appellate review, such proceeding does not violate the Seventh Amendment." *Ben Cooper, supra,* 896 F.2d at 1403.

Comparison of certain Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure underscores that point. Fed.R.Bankr.P. 8013 and Fed.R.Civ.P. 52(a) both provide that findings of fact by bankruptcy judges and district judges, respectively, in bench trials shall not be set aside on appeal unless clearly erroneous. Similarly, Fed.R.Bankr.P. 9023 provides that Fed.R.Civ.P. 59 applies in bankruptcy cases, with an exception not pertinent here. Fed.R.Civ.P. 59(a)(1), and hence Fed.R.Bankr.P. 9023, provides that a new trial may be granted in an action tried by jury for any of the reasons for which new trials are granted in actions at law in the courts

of the United States. The standards for granting a new trial in an action tried by jury are well-known. *See, e.g., Aetna Casualty & Surety Co. v. Yeatts,* 122 F.2d 350 (4th Cir.1941); 6A Moore's Federal Practice ¶ 59.05[2], at 59-41 (2d ed.1987). The limited methods known to the common law to reexamine facts tried by jury under the Seventh Amendment are also well-known. *See, e.g., Parsons v. Bedford,* 3 Pet. 433, 7 L.Ed. 732 (1830) (cited in Moore's Federal Practice, *supra,* at 59-44 n. 16). Since, as *Ben Cooper* noted, the jury verdict in a bankruptcy court core proceeding is subject to the same standards of appellate review as a jury verdict in district court, it does not violate the Seventh Amendment to conduct such trials in bankruptcy court.

## VI. ARTICLE III'S REQUIREMENTS

Some courts have taken the position that only Article III judges can conduct jury trials. Gibson, *supra,* 72 Minn.L.Rev. at 1029 n. 291 and 1038 n. 330, and cases cited therein. That conclusion is, however, plainly incorrect. The Supreme Court has acknowledged the authority of non-Article III District of Columbia judges to conduct jury trials. *Pernell v. Southall Realty,* 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974). In addition, federal magistrate judges can conduct jury trials where the parties consent. 28 U.S.C. § 636(c)(1); *Collins v. Foreman,* 729 F.2d 108 (2d Cir.), *cert. denied,* 469 U.S. 870, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984). It follows that bankruptcy judges can conduct jury trials in core proceedings without violating Article III. *Ben Cooper, supra,* 896 F.2d at 1403; *Dailey, supra,* 76 B.R. at 968; Gibson, *supra,* 72 Minn.L.Rev. at 1038-48. Moreover, the policies underlying Article III are arguably better served by jury trials than by bench trials. *Ben Cooper, supra,* 896 F.2d at 1403; Gibson, *supra,* 72 Minn. L.Rev. at 1042-43.

## VII. LOGISTICAL CONCERNS

In *Baker & Getty Financial Services, Inc., supra,* 954 F.2d at 1173, the Court of Appeals for the Sixth Circuit cited *Ellenberg v. Bouldin, (In re Bouldin)* 125 B.R.

851 (Bankr.N.D.Ga.1991), for the proposition that

> The system [in bankruptcy court] is not set up to handle lengthy jury trials. To introduce this method of litigation into the system would be at the expense of all other matters handled by the bankruptcy courts.

*Id.* at 854.

It is true that because of the great variety of types of matters which the bankruptcy court must handle every month, and the present volume thereof in New Jersey, jury trials of more than six to eight days would place a burden on the bankruptcy court in this State which would be very difficult to manage. When this court has had to conduct bench trials of greater length than that, I have had to spread them out over weeks or even months, with two or three days of trial at a time. Such a system is less than ideal even for a bench trial, and unacceptable for a jury trial. So it is true that where a jury trial would require more than six to eight days, it might be appropriate for the district court to withdraw the reference.

In this case, however, the parties estimate that the trial will take two to three days. There is absolutely no reason of a logistical nature why the bankruptcy court in this State cannot conduct a jury trial of such duration.

## VIII. CONCLUSION

In summary, the court holds that this is a core proceeding, Kazmar is entitled to a jury trial, and this court can and shall conduct it.

The attorney for the plaintiff shall submit an order within five days under Rule 4 of the Local Rules of Bankruptcy Practice. Such order shall be in proper form for certification by this court as a final order under Fed.R.Bankr.P. 7054. After the order is entered, the parties shall set up a telephone conference with the court to schedule further proceedings.