**In the Matter of: Anders S. BILLING and Diann E. Billing, Debtors.**

**Anders S. BILLING and Diann E. Billing, Plaintiffs,**

v.

**RAVIN GREENBERG & ZACKIN, P.A.; Ravin, Greenberg & Marks, P.A.; Howard Greenberg, Defendants.**

**Civ. A. No. 92–4278 (MTB).**

United States District Court,
D. New Jersey.

Jan. 25, 1993.

Ross & Hardies by Jody B. Keltz, Somerset, NJ, for plaintiffs.

Franzblau, Dratch & Friedman by Kenneth K. Lehn, Roseland, NJ, for defendants.

OPINION

BARRY, District Judge.

I.  Introduction

Plaintiffs Anders S. Billing and Diann E. Billing have brought this action against the law firm of Ravin Greenberg & Zackin, P.A.; its successor firm, Ravin, Greenberg & Marks, P.A.; and a member of the firms,

Howard Greenberg. Plaintiffs' causes of action of malpractice, misrepresentation, breach of fiduciary duty, breach of contract, and breach of professional obligations arise from what they assert was defendants' substandard representation in the course of plaintiffs' Chapter 11 bankruptcy proceedings. Defendants now move, alternatively, for dismissal of this action, abstention, referral to the bankruptcy court, or for a stay of this action until a fee dispute is resolved by the bankruptcy court.

## II. Background

Plaintiffs filed several petitions under Chapter 11 of the Bankruptcy Code in June, 1989. Defendants were thereafter retained by plaintiffs pursuant to an order of the bankruptcy court. On August 10, 1992, a Joint Modified Plan of Reorganization was confirmed by the bankruptcy court. *See* Debtors' Objection to the Final Application for Compensation and Reimbursement of Expenses of Ravin, Greenberg & Marks, Def. Moving Br., Exh. B (hereinafter "Fee Objection") ¶ 4.

Plaintiffs claim that they have paid defendants fees totalling $310,000. Fee Objection ¶ 6. Currently pending in the bankruptcy court is a dispute over defendants' final fee application for an additional $199,043.50 for services rendered in representing plaintiffs. *Id.* ¶¶ 5, 7–12. Plaintiffs have filed objections to the application relating to excessive time spent in meetings, reviewing pleadings, reviewing the file and, "most importantly," defendants' alleged malpractice as reflected by the complaint filed in this action. Fee Objection ¶¶ 7–11.

The instant action is brought in this court under 28 U.S.C. § 1334 in that plaintiffs' bankruptcy petitions, now consolidated, are pending in the District of New Jersey and this action arises under title 11 of the United States Code. Complaint ¶ 2. Plaintiffs base their claims in this action on allegations that defendants (1) failed to formulate a confirmable reorganization plan, (2) failed to meet certain bankruptcy court-imposed deadlines, (3) acted disloyally towards plaintiffs by counselling them to agree to the unreasonable demands of se-

cured creditors, (4) failed to seek a "Wedgewood Order" which allowed Citizens First National Bank to obtain relief from an automatic stay, (5) failed to oppose a motion by First Fidelity Bank to convert the Chapter 11 proceedings to Chapter 7 proceedings until two days before the return date of the motion, (6) failed to comply with the requirements of the Bankruptcy Code with respect to the assumption of a ground lease for a commercial building in Morristown, New Jersey, (7) mishandled the sale of plaintiffs' residence and the purchase of a new residence, (8) allowed Amerifirst Bank to obtain relief from the automatic stay and sell certain property for less than had previously offered for the property, and (9) denigrated plaintiffs' lender liability claims against Citizens First National Bank. Complaint ¶¶ 6–13.

## III. Discussion

Plaintiffs contend that the claims raised in this action must remain before this court because they are legal in nature and therefore implicate their Seventh Amendment right to a jury trial. The extension from this argument is twofold. First, they argue that the malpractice claims do not constitute a core proceeding and that, because the Third Circuit squarely held in *Beard v. Braunstein,* 914 F.2d 434, 443 (3d Cir. 1990), that a bankruptcy court cannot conduct a jury trial in a non-core proceeding, only this court can adjudicate this dispute. Alternatively, they argue that even if the malpractice action is deemed a core proceeding, the bankruptcy court is not empowered to conduct a jury trial. Both parties recognize that the latter question, i.e. whether a bankruptcy court may conduct a jury trial in a core proceeding, remains unanswered by the Third Circuit and is the subject of a split among other circuits. *See Metro Transportation Co. v. North Star Reinsurance Co.,* 912 F.2d 672, 675 n. 1 (3d Cir.1990); *see also In re Ben Cooper, Inc.,* 896 F.2d 1394 (2d Cir.), *cert. granted,* 497 U.S. 1023, 110 S.Ct. 3269, 111 L.Ed.2d 779 *vacated and remanded,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated,* 924 F.2d 36 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 126

(1991); *In re Grabill Corp.*, 967 F.2d 1152 (7th Cir.1992); *In re Baker & Getty Financial Services, Inc.*, 954 F.2d 1169 (6th Cir.1992); *In re Kaiser Steel Corp.*, 911 F.2d 380 (10th Cir.1990); *In re United Missouri Bank, N.A.*, 901 F.2d 1449 (8th Cir. 1990). Thus, key to a determination of whether the instant action proceeds in this court or in the bankruptcy court is whether the proceeding is deemed to be core or non-core.

## A. Core or Non-core Proceeding

■ The starting point in determining whether this action is a core or a non-core proceeding is the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The Court in *Marathon* found unconstitutional that portion of the Bankruptcy Act of 1978 which gave bankruptcy courts "jurisdiction over all 'civil proceedings arising under or *related to* cases under title 11.' 28 U.S.C. § 1471(b) (1976 ed., Supp. IV) (emphasis added)." *Id.* at 54, 102 S.Ct. at 2862. Recognizing that Congress can grant bankruptcy courts the power to issue final orders in proceedings "at the core of the federal bankruptcy power," the Court held that Congress cannot give bankruptcy courts power to adjudicate "state-created private rights" which are the province of Article III courts. *Id.* at 71, 102 S.Ct. at 2871.

In response to *Marathon*, Congress passed the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("1984 Act"), which provided that "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11 . . . and may enter appropriate orders and judgments, subject to review under section 158 of this title." Thus, in an attempt to stay within the constitutional bounds delineated by *Marathon*, Congress vested the bankruptcy courts with full adjudicative power with regard to "core" proceedings, subject to ordinary appellate review by the district courts. 28 U.S.C. §§ 157(b)(1), 158(a), (c). At the same time, it provided that as to non-core proceedings the bankruptcy court "shall submit proposed findings of fact and conclusions of law to the district court" subject to *de novo* review by that court. 28 U.S.C. § 157(c)(1).

Congress provided a non-exclusive list of core proceedings in 28 U.S.C. § 157(b)(2)(A)–(O). Defendants premise their argument that this is a core proceeding on subsections (A) and (O), the statute's two "catch-all" provisions. Subsection (A) pertains to "matters concerning the administration of the estate" while subsection (O) relates to "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." 28 U.S.C. § 157(b)(2)(A) & (O).

Courts have taken differing views of how to categorize claims as core or non-core, particularly with regard to the two catch-all provisions. Congress explicitly stated that the determination of whether a proceeding is core or non-core "shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). Some courts have taken the view that the catch-all provisions are to be interpreted narrowly:

> we hold that state law contract claims that do not fall within the categories of core proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)–(N) are related proceedings under § 157(c) even if they arguably fit within the literal wording of the two catch-all provisions, sections § [sic] 157(b)(2)(A) and (O). To hold otherwise would allow the bankruptcy court to enter final judgments that this court has held unconstitutional. Since we find the case before us a "related proceeding," the district court was correct in ruling that the bankruptcy court had no jurisdiction to enter judgment. 28 U.S.C. § 157(c)(1).

*In re Castlerock Properties*, 781 F.2d 159, 162 (9th Cir.1986). Other courts have taken the opposite view, interpreting the congressional intent behind the 1984 law to be that the phrase "core proceedings" be read broadly, "close to or congruent with constitutional limits." *In re Arnold Print*

*Works, Inc.,* 815 F.2d 165, 168 (1st Cir. 1987) (finding evidence in the legislative history that Congress intended non-core proceedings, termed "Marathon-type" cases, to be of a "very limited kind").

Beyond these polar positions, courts have found it useful to examine whether a claim arose pre-petition or post-petition, the latter being more appropriately considered core proceedings. *See, e.g. Ben Cooper,* 896 F.2d at 1400; *Davis v. Merv Griffin Co.,* 128 B.R. 78, 90–91 (D.N.J. 1991); *cf. Beard v. Braunstein,* 914 F.2d 434, 444–45 (3d Cir.1990). Finally, the Fifth Circuit compared the language of 28 U.S.C. § 157(b)(1) ("core proceedings *arising under title 11, or arising in a case under title 11"*) (emphasis supplied in *Wood*) with the language of 28 U.S.C. § 1134 setting forth the three categories of bankruptcy jurisdiction ("arising under" title 11, "arising in" title 11 cases, and "related to" title 11 cases) to distill the following test:

> a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could only arise in the context of a bankruptcy case.

*In the Matter of Wood,* 825 F.2d 90, 97 (5th Cir.1987).

Under any or all of the tests which the court might apply to determine if this action is a core or non-core proceeding and, more importantly, as dictated by common sense, it is evident that plaintiffs' claims constitute core proceedings. First, a claim which attacks the competency of the debtors' representative and seeks damages as a result must be deemed "a matter concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A). Even if that catch-all provision is read narrowly, allegations which relate to the very heart of the bankruptcy process are within the ambit of the subsection. In this regard, the court agrees with *Ben Cooper's* rejection of the *Castlerock Properties* view that state law contract claims which do not fall within the definition of one of the enumerated core proceedings, 28 U.S.C. § 157(b)(2)(B)–(N), must be deemed non-core proceedings even if arguably within the wording of one of the catch-all subsections, § 157(b)(2)(A) or

(O), as a reading which would render the two catch-all subsections mere surplusage. *Ben Cooper,* 896 F.2d at 1400. If Congress' intent to include in the definition of core proceedings matters concerning the administration of the estate is to be given any meaning at all, it must be read to include claims that the bankruptcy was negligently or intentionally mishandled.

Second, to the extent that *Marathon* or subsequent case law relies on the timing of a claim, plaintiffs' state law claims arose and were filed after the bankruptcy petitions were filed. *See Beard,* 914 F.2d at 445 (holding that action for rents was a non-core proceeding where the contracts were entered into pre-petition but the alleged breach occurred post-petition).

Third, although it is a much closer call, plaintiffs' claims can be read as satisfying the *Wood* test of the Fifth Circuit. It cannot fairly be said that plaintiffs' cause of action involves a right created by federal bankruptcy law or which can only arise in a bankruptcy case. The right asserted here—the right to competent and loyal counsel—is one of purely state origin. Although a malpractice or breach of fiduciary duty action is not such that it can only arise in a bankruptcy case, the allegations supporting the claim in this case are entirely unique to bankruptcy law. This is in stark contrast to the statement in Wood that "this suit is not a proceeding that could only arise in the context of a bankruptcy. It is simply a state contract action that, had there been no bankruptcy, could have proceeded in state court." *Wood,* 825 F.2d at 97. Here, the bankruptcy proceeding was obviously a *sine qua non* of the malpractice action. Moreover, the court in *Ben Cooper* held that "the timing of a dispute may render it uniquely a bankruptcy case." *Ben Cooper,* 896 F.2d at 1400.

Finally, and most significantly, common sense and practicalities compel the conclusion that an action alleging malpractice filed by a debtor relating to bankruptcy counsel's representation is a core proceeding. As one court has noted, "the preferable approach is not simply to apply the

terms of the statute, but rather to analyze the nature of the underlying claim to determine whether, given the constitutional constraints on bankruptcy jurisdiction enunciated in *Marathon,* that claim should be considered a core proceeding." *Harley Hotels, Inc. v. Rain's International, Ltd.,* 57 B.R. 773, 775 (M.D.Pa.1985) (quoted in *Meadowlands Communications, Inc. v. Banker's Trust Co.,* 79 B.R. 198, 199–200 (D.N.J. 1987)). Considering the general nature and relation of this claim to the basic function of the bankruptcy court, it is clear that plaintiffs' action must be considered a core proceeding.

## B. The Right to a Jury Trial

■ The Seventh Amendment provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." The Supreme Court has consistently interpreted "Suits at common law" to refer to suits involving legal rights as opposed to those based on equitable rights or seeking only equitable remedies. *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 41, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989). The Court has observed that "where an action is simply for the recovery ... of a money judgment, the action is one at law." *Pernell v. Southall Realty,* 416 U.S. 363, 370, 94 S.Ct. 1723, 1727, 40 L.Ed.2d 198 (1974) (quoting *Whitehead v. Shattuck,* 138 U.S. 146, 151, 11 S.Ct. 276, 277, 34 L.Ed. 873 (1891)). The Court in *Granfinanciera* outlined the analysis to determine if a claim is entitled to trial by jury.

> "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Tull v. United States,* 481 U.S. 412, 417–18, [107 S.Ct. 1831, 1835, 95 L.Ed.2d 365] (1987) (citations omitted). The second stage of this analysis is more important than the first. *Id.,* at 421 [107 S.Ct. at 1837]. If, on balance, these two factors indicate that a party is entitled to a trial by jury under the Seventh Amend-

ment, we must determine whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a factfinder. *Granfinanciera,* 492 U.S. at 42, 109 S.Ct. at 2790.

It is clear beyond any doubt that plaintiffs' claims are legal in nature, given that the gravamen of their complaint is negligence, malpractice, and breach of duty. These are claims which, if brought in England in the 18th century, would be subject to trial by jury. *See Chauffeurs Local 391 v. Terry,* 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990) (citing *Russell v. Palmer,* 2 Wils. K. B. 325, 95 Eng.Rep. 837 (1767) and noting that actions for legal malpractice were historically treated as actions at law). "Generally, negligence which gives rise to legal malpractice is based upon the attorney's breach of his duty of care. The essence of such an action in tort." *In re SPI Communications & Marketing, Inc.,* 112 B.R. 507, 512 (Bankr.N.D.N.Y.1990). Moreover, it is beyond question that the remedy sought is money damages, and defendants' argument that plaintiffs' claims in this action are merely a restatement of objections to their fee application before the bankruptcy court is unpersuasive. Plaintiffs seek, in addition to the disgorgement of fees already paid to defendants, compensatory damages, including consequential damages, and punitive damages. The damages sought could potentially go far beyond whatever resolution the bankruptcy court might reach with respect to the fee dispute. As the Second Circuit noted:

> Cooper seeks damages ... for alleged negligence and malpractice. It is difficult to imagine a claim that is more inherently legal ... The conclusion that 'in an ordinary tort action ... the right of trial by jury is guaranteed by the Constitution,' *United States v. Fotopulos,* 180 F.2d 631, 634 (9th Cir.1950), is so obvious that it hardly needs belaboring.

*Ben Cooper,* 896 F.2d at 1402.

## C. The Appropriate Forum

■ Having determined that the proceeding is a core bankruptcy proceeding

and that plaintiffs are entitled to a trial by jury, the court must determine if the bankruptcy court is empowered to conduct jury trials or if the Seventh Amendment mandates that the action be heard by this court and a jury. Whether bankruptcy courts may conduct jury trials has not been determined by the Supreme Court, *see Granfinanciera*, 492 U.S. at 50, 109 S.Ct. at 2794, and is the subject of a split among the circuit courts. The Sixth, Seventh, Eighth, and Tenth Circuits have held that bankruptcy courts do not have the power to conduct jury trials and that actions which implicate Seventh Amendment rights, even if otherwise categorized as core proceedings, must be heard by the district court. *In re Grabill Corp.*, 967 F.2d 1152 (7th Cir.1992); *In re Baker & Getty Financial Services, Inc.*, 954 F.2d 1169 (6th Cir.1992); *In re Kaiser Steel Corp.*, 911 F.2d 380 (10th Cir.1990); *In re United Missouri Bank, N.A.*, 901 F.2d 1449 (8th Cir.1990). The Second Circuit, on the other hand, has taken the opposite stance, holding that bankruptcy courts may conduct jury trials in core proceedings. *In re Ben Cooper*, 896 F.2d 1394 (2d Cir.), *cert. granted* 497 U.S. 1023, 110 S.Ct. 3269, 111 L.Ed.2d 779 *vacated and remanded*, 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated*, 924 F.2d 36 (2d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991); *see also In re SPI Communications & Marketing, Inc.*, 112 B.R. 507 (Bankr.N.D.N.Y.1990); *see also Dailey v. First Peoples Bank*, 76 B.R. 963, 968 (D.N.J.1987) (bankruptcy courts may conduct jury trials in core proceedings).

Unlike Article III courts, bankruptcy courts, as Article I courts, are strictly creatures of statute. *Grabill*, 967 F.2d at 1156 (citing *Northern Pipeline*, 458 U.S. at 50, 65, 86–87, 102 S.Ct. at 2858, 2868, 2879–2880); *In re Sequoia Auto Brokers, Ltd.*, 827 F.2d 1281, 1284 (9th Cir. 1987). The courts which have considered the jury trial issue all agree that Congress did not explicitly grant bankruptcy courts the statutory authority to conduct jury trials. *See, e.g., Grabill*, 967 F.2d at 1153; *Ben Cooper*, 896 F.2d at 1402. Thus, such authority, if granted at all, must be implied. *Id.* The two authorities upon which defendants primarily rely, i.e. *Ben Cooper* and *Dailey*, reach their common conclusion—that there is statutory authority for bankruptcy courts to conduct jury trials—on different bases.

The court in *Ben Cooper* compared two statutory provisions, 28 U.S.C. § 151, which states that "[e]ach bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit or proceeding," and 28 U.S.C. § 157(b), which grants bankruptcy judges the authority to "hear and determine" all cases under title 11 and all core proceedings arising under title 11 or arising in a case under title 11, to the Supreme Court's statement in *Granfinanciera* that claims which are legal in nature are subject to the Seventh Amendment right to a jury trial. *Ben Cooper*, 896 F.2d at 1402. Finding no evidence that the right of a litigant to a trial by jury on his or her legal claim does not alter Congress' intent to have a bankruptcy court hear and determine core matters, the court concluded that "[c]onstruing the Bankruptcy Code to allow jury trials in the bankruptcy court is the only way to reconcile these various concerns."

The *Dailey* court, on the other hand, took a more historical approach, looking to the development and refinement of the statutory authority granted to bankruptcy courts. Recognizing that the constitutionality of the general grant of power of the Bankruptcy Reform Act of 1978, which is widely considered to have provided bankruptcy courts with the authority to conduct jury trials, was called into question by the Supreme Court in *Marathon*, the court traced the state of the issue through the passage of the 1984 Act. *Dailey*, 76 B.R. at 967. The Emergency Rules of Bankruptcy Procedure, promulgated in response to *Marathon*, prohibited bankruptcy courts from conducting jury trials. *Id.* Noting that many of the Emergency Rules were later incorporated into the 1984 Act, and highlighting the fact that Congress did not include the Emergency Rules' prohibition of jury trials in the Act, the court conclud-

ed that "had Congress intended to abrogate the bankruptcy court's authority to empanel juries, it would have enacted the Emergency Rule to accomplish that." *Id.* The court further noted that Bankruptcy Rule 9015, which restored the power to hold jury trials to bankruptcy courts, had been promulgated and approved by the Supreme Court prior to Congress' passage of the 1984 Act. This, the court opined, bolstered its position that if Congress had intended to abrogate the power to conduct jury trials, it would have done so explicitly. *Id. But see Ben Cooper,* 896 F.2d at 1403 (Rule 9015, which merely prescribed a procedure for jury trials in the event such a power were granted, was withdrawn in 1987 because bankruptcy courts were improperly relying on it as substantive support for their right to conduct jury trials). Finally, the court pointed out that the weight of authority at that time found that bankruptcy courts are empowered to hold jury trials. *Id.*

As noted earlier, the reasoning and result of *Ben Cooper* and *Dailey* stand in contrast to the recent opinions of four circuit courts. The Eighth Circuit took issue with the Second Circuit's finding of an implied power, stating that the ability to conduct jury trials is not "practically indispensable and essential to execute the power actually conferred," as would be necessary to properly find implied authority. *United Missouri Bank,* 901 F.2d at 1456. The court interpreted the vague legislative history of the 1984 Act as a general endorsement of the Emergency Rules and found that "if anything can be gleaned from [the legislative history], it is that Congress intended to continue the Emergency Rule's prohibition against bankruptcy judges conducting jury trials." *Id.* at 1455 n. 16.

The Tenth Circuit augmented the analysis of the Eighth Circuit by noting that Congress had enacted no counterpart in the 1984 Act to section 1481 of the 1978 Act, which broadly vested bankruptcy courts with "the powers of a court of equity, law and admiralty." *Kaiser Steel,* 911 F.2d at 391 (citing 28 U.S.C. § 1481 (repealed)). Moreover, the court in *Kaiser Steel* found

that section 157(b)(1) gives bankruptcy judges the *personal* power to hear and determine core matters but does not empower the judges to delegate such authority to a jury. *Id.*

Finally, in *Grabill* the Seventh Circuit dealt yet another blow to what was by that time the wounded position of *Ben Cooper* and *Dailey.* In addition to citing with approval *United Missouri Bank* and *Grabill,* as the Sixth Circuit had done in *Baker & Getty,* the court paid homage to the axiom that "[j]urisdictional statutes are to be construed 'with precision and fidelity to the terms by which Congress has expressed its wishes.'" *Id.* (quoting *Palmore v. United States,* 411 U.S. 389, 396, 93 S.Ct. 1670, 1675, 36 L.Ed.2d 342 (1973) (quoting *Cheng Fan Kwok v. INS,* 392 U.S. 206, 212, 88 S.Ct. 1970, 1974, 20 L.Ed.2d 1037 (1968))). The court noted that the Federal Magistrates Act, which contains similar provisions empowering magistrate judges to "hear and determine" pretrial matters, separately delineates the authority of the magistrate judge, upon consent of the parties, to conduct "any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case...." 28 U.S.C. § 636(c)(1). Finding the statutory schemes empowering magistrate judges and bankruptcy judges analogous, the court noted that no such delineation of authority to conduct jury trials exists for bankruptcy courts. *Grabill,* 967 F.2d at 1155–56. Concluding that it must assume that Congress legislated with care and that an express provision granting power to preside over jury trials would have been "easy" to promulgate, the court held that "any attempt to glean implied congressional authorization from the scant legislative history amounts to 'an illusory search,'" and that, therefore, bankruptcy courts cannot conduct jury trials. *Id.* at 1154, 1156 (quoting *In re Jackson,* 118 B.R. 243, 243 (E.D.Pa. 1990)).

Considering the substantial analyses of those courts that have already considered this question, this court need go no further than to say that it will adopt the approach taken by the Eighth, Tenth, Sixth, and Sev-

enth Circuits. The lack of explicit statutory authority and the tenuous and equivocal nature of the arguments in favor of finding implied congressional authorization persuade the court that Congress did not intend to grant bankruptcy courts the power to conduct jury trials. This view, which now appears to be the solid majority, comports with both the statutory construction of the 1984 Act and the historical development of the powers of the bankruptcy courts.[1]

Defendants' motion to dismiss this action or, in the alternative, for an order of abstention, referral to the bankruptcy court, or for a stay until the fee dispute before the bankruptcy court is resolved, will be denied.[2]

---

1. Because the court finds that there is no statutory authorization for bankruptcy courts to hear jury trials, it need not address the constitutional question as to whether such an authorization would run afoul of Article III.

2. Because plaintiffs have a right to a trial by jury and the bankruptcy court is not empowered to conduct a jury trial, defendants' motion to dismiss or refer this action to the bankruptcy court must be denied. The request for a stay of this action until the fee dispute has been resolved by the bankruptcy court and the motion for an order of abstention, the nature of which is totally unclear in the defendants' briefs but which presumably would have the same effect as a stay, must similarly be denied. Because the debtors' fee objections are based in large part on the allegations of malpractice at issue in this action, the merits of the malpractice claims must be resolved before there can be a resolution of the fee dispute. Therefore, this action cannot await a determination of the fee dispute in bankruptcy court; rather, that dispute must await the outcome of this action.