**In re CHADWICK BAY HOTEL ASSOCIATES, Debtor.**

**CHADWICK BAY HOTEL ASSOCIATES, INC., et al., Plaintiffs,**

v.

**CITY OF DUNKIRK, NEW YORK, Defendant.**

**Bankruptcy No. 94–12560 B. Adv. No. 94–1229 K.**

United States Bankruptcy Court, W.D. New York.

Feb. 27, 1995.

---

Raymond L. Fink, Saperston & Day, Buffalo, NY, James T. Towne, Michael P. Ginley,

Kingsley and Towne, P.C., Albany, NY, for plaintiffs.

John H. Hurley, Phillips, Lytle, Hitchcock, Blaine & Huber, Randall D. White, Mark R. Uba, Connors & Vilardo, Buffalo, NY for defendant.

MICHAEL J. KAPLAN, Chief Judge.

### I. INTRODUCTION

■ This matter appears to involve a question not previously addressed in any published cases: Should the Court rule on a non-debtor litigant's motion to remand this adversary proceeding to state court before that litigant is willing to inform the Court whether or not it will assert any claims against the Chapter 11 Debtor–in–Possession, and thereby submit to adjudication of the matter by this Court? The litigant's claims exceed one million dollars, are vigorously disputed by the Debtor, and if allowed will constitute a substantial part of the obligations which the Debtor seeks to restructure.[1]

The Court rules that it is appropriate in this case, under Fed.R.Civ.P. 16(b)(6), incorporated by Bankruptcy Rule 7016, to fix a date by which the litigant must assert its claims in the underlying Chapter 11 case if it is to do so at all. The Court will await that election before ruling upon the litigant's motion to remand or abstain.[2]

As explained below, the Court finds that fixing a deadline for that election is sensible, expedient and fair here. More specifically, it comports with Rule 16 and the duty under Fed.R.Civ.P. 1 and Bankruptcy Rule 1001 to construe the Rules to "secure the just, speedy and inexpensive determination" of every action, case or proceeding; it is in harmony with the 1984 congressional response to the constitutional infirmities set forth in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); and it is in harmony

---

1. The litigant is the defendant in an action brought by the Debtor in state court and then removed here. Over $700,000 of the claims in question were raised as counterclaims in the state court action.

2. Fixing a claims bar date under Bankruptcy Rule 3003(c)(3) has not yet been requested by the Debtor; but the litigant represents that it would oppose the fixing of that bar as to its claims, on the same grounds it opposes a "selective" bar date that would apply to it alone.

with Congress's solicitude for other aspects of choice of forum issues addressed in the 1984 amendments to the Bankruptcy Code and to other bankruptcy statutes.[3]

## II. FACTS

Although the Court makes no findings of fact in this decision, the following information appears to be undisputed, except where noted. Debtor Chadwick Bay Hotel Associates ("Chadwick") is a New York Limited Partnership and the operator of the Sheraton Harborfront Inn in the City of Dunkirk, New York (the "City"). The hotel is situated on the shore of Lake Erie adjacent to a marina.

The hotel was conceived in the early 1980s as one component of a three part waterfront development intended to resuscitate the economy of downtown Dunkirk. The land upon which the project would be built was owned by the City of Dunkirk Industrial Development Association (the "IDA"). The development was to include a hotel, a marina, and an office, retail and residential condominium complex ("the Plaza"). The Chadwick limited partnership was created by private-sector persons and entities expressly to develop the hotel. In furtherance of the development concept, the City, Debtor, and one "Wilmorite Corporation" all allegedly entered into an Urban Development Action Grant ("UDAG") agreement with the United States Department of Housing and Urban Development ("HUD") worth over $2.7 million.

Debtor entered into a series of transactions with the IDA in order to gain use of the land and additional financing for the construction of the hotel. Although the details of the arrangement are, as is typical of an IDA project, extremely complex, the net result is that the Debtor became liable to the IDA for ground lease payments, mortgage payments, and Payments in Lieu of Taxes ("PILOT Payments"). Apparently, the IDA later assigned its interest in this project (or at least the right to collect payments) to the City. Some or all of these payments are the subject of the City's counterclaims set forth in their Answer filed in this action.

The hotel was completed by the Debtor and has been operating since 1989, and the marina is likewise complete. The Plaza, however, which was to be constructed by Wilmorite, has never been built, and Wilmorite has allegedly stated by letter to the City that it has withdrawn from the project. Debtor claims that the absence of the Plaza has had a substantial negative impact on its hotel business and on its ability to refinance its debts.

Debtor brought suit against the City in June 1994 in New York State Supreme Court asserting, among other legal theories, that the City breached the UDAG agreement by neither seeking contract damages from Wilmorite nor enforcing the $2.4 million corporate guarantee of completion and the $1.2 million personal guarantee of completion of the Plaza. Debtor asserts $6.6 million in damages based on the City's failure to ensure the completion of the Plaza. It is Debtor's position that it cannot operate the hotel profitably without a completed Plaza, and that it relied upon the completion of the Plaza when it made its original financial projections for the project. In fact, Debtor argues, the hotel venture was undertaken only because of the City's representations about the project, and the Debtor was formed exclusively for the purpose of the venture and in light of those representations.

In September of 1994, Debtor filed Chapter 11 and subsequently removed the state court action to the Bankruptcy Court, claiming that it is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2). The City responded to the notice of removal by filing a motion for the Court to abstain or remand the action to state court, insisting that the action is not a core proceeding.

The parties submitted memoranda of law on the City's motion, and the Court heard oral argument, focusing primarily on the is-

---

**3.** Bankruptcy Rule 3003(c)(3) might constitute an alternative basis for today's ruling, but references to "proofs of claims" and "claims bar" are laden with important implications of form that are inapposite here. The present Order does not, in fact, fix a "claims bar date." It fixes a date by which the City is to inform the Court as to whether it intends to seek any money from the Debtor in this Chapter 11 proceeding or not.

sue of whether or not this adversary proceeding is core. Only two principles became clear after oral argument. First, this action, which superficially appears to be nothing more than an ordinary pre-petition breach of contract claim, is neither clearly core nor clearly non-core. This is true despite the guidance of the Second Circuit's decision in *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095 (2d Cir.1993), *cert. dismissed,* —— U.S. ——, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994).[4] Second, it became clear to the Court that ruling on the coreness issue would result in both inefficient litigation in this case and added difficulty in administering the bankruptcy case. A ruling on coreness would not simplify this litigation at all or advance it any closer to a natural conclusion. At best, a decision on the core issue could quickly become academic, moot, or the source of further litigation over forum; and at worst, it could hinder the progress of the bankruptcy case and result in a substantial waste of all of the parties' resources. Determination by the Court of coreness merely distorts the course of future litigation into a maze of permutations of non-substantive legal action arguing over forum. These possibilities are described here seriatim.

### III. POSSIBLE AVENUES OF FUTURE LITIGATION

The following is an outline of different directions in which the litigation might proceed after a ruling on coreness:

I. If this matter is held to be core, it may be heard and determined by this Court unless abstention is "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). However, the City may then obtain from the district court either (1) leave to appeal either the coreness or abstention decision; or (2) withdrawal of the reference of the action to the Bankruptcy Court pursuant to 28

U.S.C. § 157(d). Additionally, if the City has a right to a jury trial, this Court would direct the parties to move in the district court for an order withdrawing the reference. *See* footnote 5, *infra.*

II. If this matter is held to be non-core, then:

  A. The City may consent to adjudication by this Court; or

  B. If the City does not consent to determination by this Court, then:

    1. The Court may only "hear and report" findings of law and findings of fact to the district court. 28 U.S.C. § 157(c)(1); or

    2. If the City has a right to jury trial, as it has demanded, then because this Court ought not try a jury case that it cannot decide, either:

    a. The parties would be directed to move in the district court for an order withdrawing the reference so that a district judge may try the case to a jury; or

    b. If this Court determines that the proceeding can be "timely adjudicated" in state court, then this Court must recommend to the district court that abstention is required by 28 U.S.C. § 1334(c)(2), in which event the Debtor may object to that recommendation and obtain de novo review of whether the matter is properly held to be non-core, and if so, then whether it was properly decided that it can be timely adjudicated in state court; or

    c. If this Court determines that the proceeding cannot be timely adjudicated in state court, but that the interest of justice or the interest of comity with state courts or respect for state law so requires, then this Court must recommend to the district court that it should abstain as a matter of discretion, and the Debtor may object to

---

4. In *Orion,* the Second Circuit ruled in essence that an action for damages for pre-petition breach of a pre-petition garden-variety contract is non-core. Here: (1) the contract in question was the Debtor's *raison d'etre,* (2) the alleged breach goes to the foundations of the contract,

and (3) the cause of action is alleged to be a pivotal asset around which the Debtor seeks to reorganize. (None of these three points are, of themselves, unusual, and the Court is confident that no one of them alone would likely sustain a finding that the proceeding is core.)

that recommendation on both grounds (coreness and discretion); and

C. If at any time the City elects to file a proof of claim, all of the prior proceedings in any court (bankruptcy court, district court, and state court) with regard to the choice of forum would become academic, since the same substantive issues raised in this proceeding would be raised as objections to the claim and as counterclaims, which are clearly core. 28 U.S.C. § 157(b)(2)(B) and (C) and § 157(b)(4). As core issues, they are triable here unless the City has a right to trial by jury, in which event the parties would be directed to seek withdrawal of the reference;[5] but

D. If at any time the Debtor files a proof of claim on behalf of the City pursuant to Bankruptcy Rule 3004 and seeks disallowance thereof for purposes of the reorganization effort, see 11 U.S.C. § 502(b) and Bankruptcy Rule 3007, then the same substantive issues are clearly before this Court as in the adversary proceeding (as in "C" above); and

E. Any resolution of the issues presented in this litigation that are resolved by this Court after the City files a proof of claim ("C" above) or defense by the City against any claim filed on its behalf by the Debtor ("D" above) is entitled to operation of the "normal rules of res judicata and collateral estoppel ... and may not be relitigated in" the state court action. *Katchen v. Landy,* 382 U.S. 323, 334, 86 S.Ct. 467, 475, 15 L.Ed.2d 391 (1966).

## IV. MISCONCEPTIONS

■■■ It is useful to set aside some mistaken impressions raised in the record. The City implies that the Court is refusing to make the fundamental and critical ruling of whether it has jurisdiction over this adversary proceeding. The Court unequivocally has jurisdiction. Plaintiff is a Chapter 11 Debtor–in–Possession who timely removed this action to this Court. The matter is properly here. The questions the City asks are (1) whether the case is here to hear and determine, 28 U.S.C. § 157(b), or to hear and report, 28 U.S.C. § 157(c); and (2) if the latter, then is the matter appropriate for mandatory abstention, 28 U.S.C. § 1334(c)(2), discretionary abstention, 28 U.S.C. § 1334(c)(1), or withdrawal of the reference in light of the jury demand, 28 U.S.C. § 157(d). The issue of who should "decide" this matter is not jurisdictional. As the Second Circuit has recently stated, "the abstention provisions implicate the question whether the bankruptcy court should exercise jurisdiction, not whether the court has jurisdiction in the first instance.... The act of abstaining presumes that proper jurisdiction otherwise exists." *S.G. Phillips Constr., Inc. v. City of Burlington, Vt. (In re S.G. Phillips Constrs., Inc.),* 45 F.3d 702, 708 (2d Cir.1995) (citation omitted).

The City suggests that there is a "pretext," "pretense" or "ambush" in the Court's ruling today. Although the City's claimed right to a ruling on coreness is profound and well-understood by the Court, the Court believes that the considerations calling for an election by the City are no less profound, and are better founded in law and good sense. "Pretext" and "ambush" connote hiding or feigning. All the Court seeks is a free election by the City in the face of clearly visible consequences. Such elections are common fare under Rule 16, where deadlines are set for joinder of parties, amendment of pleadings, and other actions that may make the

---

**5.** Consider the difference between *Ben Cooper, Inc. v. Insurance Co. of Pa. (In re Ben Cooper, Inc.),* 896 F.2d 1394, 1403 (2d Cir.1990), holding that a bankruptcy court may conduct jury trials on core proceedings even without the parties' consent and 28 U.S.C. § 157(e) (as amended October 22, 1994) requiring the "express consent of all the parties" to conduct a jury trial in the bankruptcy court. Because the amended version of § 157(e) does not apply to this case, which was filed in September 1994, the status of the law is unclear, and this Court would direct the parties to seek an order withdrawing the reference, and, at the least, re-reference with instructions, in order to minimize the risk of reversible error, if this proceeding is core *and* triable to a jury.

difference between a successful result or an unsuccessful one.

Contrary to the City's lament, the "playing field" is not tilted by this decision. Why must the Court answer the City's questions of law before the City announces its intentions? The Debtor and the Court ask whether the City will seek to participate in the reorganization by asserting its second mortgage claims and ground lease claims (as assignee of the IDA) and consequently submit to decision here of the present claims, or choose not to participate and thereby preserve its right to maintain its posture as one who does not wish to be here in bankruptcy court at all.

To be sure, the issue presented here is whether a litigant who maintains a strategic advantage in insisting that it does not want to be before this Court should be ordered to commit to that position by abandoning future use of a contrary position. In the alternative, of course, it may decide that it does want to be here, and simply file a claim.

■ Finally, it is implied that the Court is here attempting to "finesse" a result at odds with some otherwise clear right, obligation or duty. The answers to the issues raised in the City's motion are not clear because the arguments in favor of coreness are not insubstantial. This matter is not patently non-core under *Orion*, although this Court might ultimately rule that *Orion* is dispositive. Even if it were patently non-core, this Court could well rule that a declaration to that effect may be held "hostage" until the City makes its election. It is a Rule 16 duty of the Court, in light of Rule 1, to insure that unambiguous steps that may simplify the litigation be undertaken before the Court and parties face complex issues with expensive results.

## V. REASONS FOR EXERCISE OF DISCRETION IN FAVOR OF A DEADLINE

The reasons that this deadline for an election is appropriate are not exotic. They rest

upon protection of the Debtor's creditors and good sense.

The Debtor's position throughout its dispute with the City has been consistent and genuine. The City's position has been divided: insisting on a right to be in another forum in this matter, while reserving a right to come back here later if it suits the City's purposes.

Such duality is not available in bankruptcy court. That it is not available may be viewed as unfair to those who did not envision that their disputes with the Debtor might become disputes with the Debtor's creditors, but once Chapter 11 is invoked, the Debtor becomes a fiduciary for the benefit of all of its creditors. The cost to the estate of litigating in a different forum (ultimately coming out of the pockets of creditors), or of needless or wasteful litigation becomes a significant concern to the Court. This is not like purely private disputes, and distinguishes Bankruptcy Rule 7016 practice from Fed.R.Civ.P. 16 practice in private civil litigation.

Civil litigation related to a Chapter 11 case is not isolated and insulated from the rehabilitative purposes of Chapter 11. A war of attrition, which a financially strapped debtor and its creditors will always lose, will not be approved here.[6] Rule 16–type practice here is more akin to that in class actions under Fed.R.Civ.P. 23 than in strictly private litigation.[7]

If the Debtor and its creditors are to formulate a plan of reorganization, they must not be required to make provisions to pay the City as the second largest creditor in this case, and at the same time seek to prove in a different forum that the City is not entitled to payment. 28 U.S.C. § 157(b)(2)(B) makes it clear that that is not to happen. The Debtor may file a proof of claim for the City and commence that fight at any time, but absent a finding that this is a core proceeding, the forum for resolution of the Debtor's claims for affirmative relief against the City await (to a great extent) the City's pleasure, in light of the practical realities set forth

---

6. This is not a finding that the City's posture here is other than considerate of such concerns.

7. See, for example, F.R.Civ.P. Rule 23(d)'s solicitude for the rights of class members not personally present before the Court.

above at Part III. By withholding decision, the City denies creditors answers necessary to the Debtor's reorganization. On the other hand, any answer the Court might provide to the City's motion advances the reorganization not one iota, regardless of the ruling.

Fixing of a claims bar date is routine in Chapter 11 cases, required by Bankruptcy Rule 3004. The present case is unique only in that a deadline for the City to elect to participate in this reorganization effort (assert its unsecured claims, defend its liens, etc.) denies the City the advantage of maintaining dual positions at creditors' expense. If the City wishes the full constitutional protections of the *Marathon* decision, then it, like the defendant in *Marathon,* must have "no other connection with the bankruptcy." *Phillips Constr., Inc.* 45 F.3d at 706 (citation omitted).

## VI. MARATHON AND OTHER CONSIDERATIONS OF FORUM

Cogent explanations of the *Marathon* case and its implications are legion.[8] In *Marathon,* the Supreme Court preserved the right of a litigant to adjudication by an Article III Judge when a non-core issue is presented in a bankruptcy case. That case did not suggest that the litigant had a right to a non-federal forum. Hence, *Marathon* does not guarantee the City a state forum. Even if the matter is non-core, it may be heard in this Court or in U.S. District Court. Consequently, no right preserved by *Marathon* is being denied to the City by today's ruling.

In the 1984 legislative response to *Marathon,* Congress confronted some concerns other than *Marathon,* to wit: concerns over bankruptcy judge resolution of conflicts between bankruptcy law and labor law (or other law affecting interstate commerce) (28 U.S.C. § 157(d)), concerns over bankruptcy judge adjudication of personal injury claims such as those arising from exposure to asbestos (28 U.S.C. § 157(b)(2)(O) and (b)(5)); and concerns regarding federal court intrusion into matters upon which the state courts have a sound hand and a strong interest (28 U.S.C. § 1334(c)).

As noted above, the Second Circuit recently held that under the 1984 Amendment, none of these choice-of-forum provisions implicate the jurisdiction of this Court.

So long as this Court has jurisdiction, it will exercise it sensibly and will defer the choice-of-forum issues until it becomes clear that it would not be counter-productive to address them.

## VII. CONCLUSION

It was announced at hearing on February 10, 1995, that the City would have until March 10, 1995 to file a proof of claim. Upon further reflection, the Court believes that its use of those words was inappropriate. Too many implications of "form" are invoked. (The Court is not here dispensing with form requirements. Rather, so long as the City will declare its intentions, the present litigation may proceed with knowledge that the observance of proper formalities will follow.)[9]

---

**8.** *For example, see Orion* at 1100–02; *Shugrue v. Air Line Pilots Assoc., Intl. (In re Ionosphere Clubs, Inc.),* 922 F.2d 984, 994–95 (2d Cir.1990); *Piombo Corp. v. Castlerock Properties (In re Castlerock Properties),* 781 F.2d 159, 160–61 (9th Cir. 1986); *United States Lines, Inc. v. American S.S. Owners Mut. Protection and Indem. Assoc., Inc. (In re United States Lines,* 169 B.R. 804, 813–21 (Bankr.S.D.N.Y.1994).

**9.** Were the present ruling one which simply sets a bar date on the filing of a claim, and not on the City's response to the Debtor's clearly stated intention to pay the City nothing, this Order would have no meaning. Although it is clear that as to an unsecured claim, failure to file before the bar date would constitute a waiver, as to secured claims that are not filed, the method for extin-

guishing the lien would ordinarily be more complicated. First the Debtor would file the claim for the creditor; then the Debtor would object to it under § 502(b)(1) on the grounds that its claims against the City may be raised as rights of setoff under state law, in any action by the City on its secured claims. *See* 11 U.S.C. § 558 (giving the estate the right to use any defenses that were available to the debtor). If the claim is disallowed on that ground, then the lien is "void." *See* 11 U.S.C. § 506(d) as illuminated by *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

While it might be difficult to perceive how defending the claim against the Debtor's claim of setoff is not the functional equivalent of formally filing a claim for § 157(c)(2)(C) purposes, that issue has not been briefed or argued.

The City shall have until March 10, 1995 (inclusive) to tell this Court and the Debtor, in writing, whether it will or will not assert its right to payment and to preservation of its liens in this Chapter 11 case. The City may do so in any unequivocal written form of its choosing. It is warned, however, that its election must meet the Court's concerns set forth above, and will bind the City.

SO ORDERED.