In re LANDS END LEASING, INC., Debtor.

Peggy E. STALFORD, Trustee of Lands End Leasing, Inc., Plaintiff,

v.

BLUE MACK TRANSPORT, INC., a Pennsylvania corporation, Continental American Transport, Inc., a corporation, North American Motor Freight Investment Group, a corporation, Meyers Men Acquisition Corp., a corporation, Corestates Bank, N.A. (formerly Philadelphia National Bank), a corporation, AmSouth Bank (f/k/a Fortune Savings Bank), a Florida corporation, Herbert Bailey, individually and as an officer of Lands End Leasing, Inc., and John Doe Truckdriver 1 through 150, Defendants.

Bankruptcy No. 93–36360.
Adv. No. 95–3031TS.

United States Bankruptcy Court,
D. New Jersey.

March 27, 1996.

Jeffrey A. Donner, Shain, Schaffer & Rafanello, P.C., Bernardsville, New Jersey, for Peggy E. Stalford, Trustee.

D. Ethan Jeffery, Ciardi, Maschmeyer & Karalis, P.C., Atlantic City, New Jersey, for defendants.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This is the court's decision on the defendants' right to a jury trial on the trustee's verified complaint. This court has subject matter jurisdiction under 28 U.S.C. § 1334(b), § 151, and § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E) and (O). The court's findings of fact and conclusions of law are as follows.

### FACTS

Lands End Leasing, Inc. (hereinafter the "debtor") filed a voluntary petition for relief under chapter 11 of title 11, United States Code (hereinafter the "Bankruptcy Code" or "Code") on October 20, 1993 (hereinafter the "petition date"). The Debtor's case was subsequently converted to a chapter 7 case and a chapter 7 trustee (hereinafter the "trustee") was appointed. On and following the petition date, the debtor was a lessor under certain equipment lease agreements (hereinafter "lease agreements") with at least 35 truckers (hereinafter the "truckers") as lessees. Pursuant to the lease agreements, the truckers leased 19 Kenworth tractors, 15 Freightliners, and one Peterbilt and were to pay the debtor monthly lease payments totaling approximately $2,000. per individual trucker. Certain of the lease agreements were amended to provide for the respective trucker's purchase of his leased tractor (hereinafter the "lease/purchase agreements").

In addition to their lease arrangement with the debtor, the truckers were also lessors under a separate agreement with Mural Transport, Inc. (hereinafter "Mural"), the parent company of the debtor and itself a debtor whose case has been administratively consolidated with the Lands End case. Under a service lease arrangement (hereinafter the "service leases") with Mural, the truckers leased their services and use of their trucks to Mural. The debtor had an arrangement

with Mural whereby Mural collected from the truckers all monies due the debtor under the lease/purchase agreements. On and following the petition date, Mural collected these payments by deducting the amount paid under the lease/purchase agreements from the amount Mural owed the truckers under the service leases. Mural continued collection in this manner through October or November 1994 at which time Mural ceased operations.

The trustee alleges that in October or November 1994, the principals of the debtor directed the truckers to cease delivery for Mural and to commence delivery for defendant Blue Mack Transport, Inc. (hereinafter "Blue Mack"). The trustee further alleges that in November or December of that same year, the principals of the debtor instructed Blue Mack employees to collect from the truckers the lease/purchase payments due the debtor.

At the time the debtor's principals allegedly ordered Blue Mack to collect the lease/purchase payments, Blue Mack was operated by and continues to be operated by Eric Bailey, the son of defendant Herbert Bailey. During that same time, defendant Continental American Transport, Inc. (hereinafter "CATCO") was seeking to acquire Blue Mack, which has since become a subsidiary of CATCO. Defendant Herbert Bailey (hereinafter "Bailey") is the chief financial officer, vice president, and secretary of the debtor as well as an officer and majority shareholder of CATCO and the chief financial officer of defendant North American Motor Freight Investment Group (hereinafter "NAMFIG").

The court, in an order dated November 21, 1994, approved the sale of certain Kenworth trucks (hereinafter the "Kenworth Sale") to defendant Meyers Men Acquisition Corp. (hereinafter "MMAC"), a corporation in which Bailey holds a fifty percent ownership interest. The trustee alleges that some or all of the trucks approved for sale to MMAC are the same trucks the debtor contracted to sell to the truckers under the lease/purchase agreements. The trustee further asserts that the debtor did not notify the truckers of the Kenworth Sale.

In a subsequent order dated December 22, 1994, the court approved the sale of certain Freightliner trucks (hereinafter the "Freightliner Sale") to MMAC. The trustee alleges that some or all of the trucks approved for sale to MMAC are the same trucks the debtor contracted to sell to the truckers under the lease/purchase agreements. The trustee further asserts that the debtor did not notify the truckers of the Freightliner Sale.

The trustee alleges that from November or December 1994 to date, Blue Mack has collected and continues to collect the truckers' payments due under the lease/purchase agreements. The trustee further alleges that Blue Mack has paid and continues to pay these monies to NAMFIG, either directly or through CATCO. The trustee made a demand upon Blue Mack that Blue Mack cease collection of the lease/purchase payments, turn over the collected payments, and provide an accounting of the monies collected. The trustee asserts that Blue Mack has not complied with the trustee's demand.

### *The Complaint*

On January 12, 1995 the trustee filed an eight-count verified complaint in this adversary proceeding seeking the turnover of property, an accounting of estate assets, compensatory and punitive damages for alleged fraudulent conduct, avoidance of post-petition sales, and injunctive relief. The trustee named as defendants Blue Mack, CATCO, NAMFIG, MMAC, Bailey, individually and as an officer of the debtor, and Corestates and AmSouth Banks, respective recipients of the proceeds of the Kenworth and Freightliner sales (hereinafter collectively the "defendants").

On April 13, 1995, the court entered an order for temporary relief (hereinafter the "April Order") directing Blue Mack, CATCO, and NAMFIG to provide the trustee with the requested accounting of the lease/purchase payments collected on the debtor's behalf and to turn over any and all collected payments to the defendants' attorneys. The order also resolved and dismissed Counts V through VIII. The trustee asserts that the

defendants have not complied with the April Order.

Counts I through IV remain. The following is a summary of the remaining counts and the relief sought. The parties disagree as to the status of the resolution of these counts following the April Order.

*Count I:* The trustee alleges that the payments due and owing the debtor under the lease/purchase agreements are property of the estate under Code § 541, and that since November 1994 Blue Mack has collected and continues to collect these payments and has failed to turn them over to either the debtor or the trustee despite the trustee's demand. The trustee seeks an order compelling Blue Mack to cease collection of the lease/purchase payments, to turn over all collected lease/purchase payments and to provide an accounting of all payments collected and delivered to the debtor, its principals, officers, agents or third parties. The trustee also seeks an order compelling the truckers to cease making the payments to Blue Mack and to commence paying them to the trustee. The trustee further seeks an award of costs of suit from Blue Mack plus all further relief the court deems appropriate.

*Count II:* The trustee alleges that Blue Mack has paid and continues to pay the collected payments due the debtor under the lease/purchase agreements to NAMFIG, directly or indirectly through CATCO. The trustee seeks an order compelling Blue Mack to deliver and provide a full accounting to the trustee of all payments collected. The trustee further seeks an order directing NAMFIG to deliver and provide an accounting to the trustee of all monies received from Blue Mack and/or CATCO and directing CATCO to deliver and provide an accounting to the trustee of all monies received from Blue Mack and/or NAMFIG. Again the trustee seeks an award of the costs of suit and other appropriate relief.

*Count III:* The trustee alleges that Blue Mack is in control or possession of certain trucks and tractors to which the debtor retains title and which are property of the estate under Code § 541. The trustee seeks an order directing Blue Mack to turn over and provide an accounting of such vehicles currently or formerly in Blue Mack's possession or control and for which the title is or was in the debtor's name. The trustee further seeks compensatory damages for any damage or loss to the vehicles, costs of suit, and other appropriate relief.

*Count IV:* The trustee alleges that Bailey acted as chief financial officer, vice president, and secretary of the debtor, chief financial officer of NAMFIG and officer and shareholder of CATCO at all times relevant to the complaint. The trustee also alleges that Bailey directed Blue Mack to collect the lease/purchase payments due the debtor at a time when Bailey knew or should have known the payments were property of the estate. Further, the trustee asserts that Bailey as an officer of the debtor owed a fiduciary duty to the debtor and its creditors which he breached by participating in the simultaneous sale of the same assets to both the truckers and MMAC and by diverting the lease/purchase payments to entities in which Bailey held a financial interest. As a result of this alleged breach, the trustee asserts that the debtor, its creditors, and the estate have been harmed. The trustee seeks a judgment against Bailey for damages resulting from his breach of fiduciary duty and compensatory and punitive damages resulting from Bailey's hindrance, delay, and defrauding of creditors and subsequent harm to the estate. The trustee further seeks costs of suit and other appropriate relief.

The matter at issue in this opinion is the demand by defendants Blue Mack, CATCO, NAMFIG, MMAC, and Bailey's for a jury trial on Counts I through IV of the trustee's verified complaint. Defendants assert that the April Order resolved many of the issues raised in Counts I through IV. Defendants contend that the remaining claims are legal in nature and thus carry a right to trial by jury. Defendants argue further that the trustee's legal claims raise non-core related matters under 28 U.S.C. § 157 and that this

court therefore lacks the authority to conduct a jury trial on those issues.

The trustee contends that Counts I through IV raise equitable issues which carry no right to a jury trial. Moreover, the trustee argues that MMAC and Blue Mack have waived any right to a jury trial by filing claims against the debtor's estate, thereby submitting themselves to the jurisdiction of this court. Alternatively, the trustee asserts that if a jury trial is required, this court is the appropriate forum in which to conduct such trial because the matter is a core proceeding under 28 U.S.C. § 157(b).

## CONCLUSIONS OF LAW

### I. Are the Defendants Entitled to a Jury Trial?

The first issue to be decided is whether the defendants have a Seventh Amendment right to a jury trial on Counts I through IV of the verified complaint. An analysis of the right to a jury trial necessarily begins with the Seventh Amendment and the Supreme Court's seminal decision in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." The Supreme Court has construed "Suits at common law" to mean cases involving legal, as opposed to equitable, rights. *See Granfinanciera*, 492 U.S. at 41, 109 S.Ct. at 2790. The Seventh Amendment right to a jury trial on legal claims also extends to suits brought to enforce statutory rights that are analogous to actions traditionally brought in English courts of law. *Id.* at 42, 109 S.Ct. at 2790. While the Seventh Amendment preserves the right to a jury trial on legal claims, there is no right to a jury trial of equitable claims. *Id.; Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1245 (3d Cir.), *reh'g de-*

*nied* (May 23, 1994), *cert. denied,* — U.S. ——, 115 S.Ct. 508, 130 L.Ed.2d 416 (1994). Where legal and equitable claims are brought in one case, however, a party retains the right to a jury trial on the legal claims even where the legal issues are characterized as incidental to the equitable. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 473 & n. 8, 82 S.Ct. 894, 897 & n. 8, 8 L.Ed.2d 44 (1962). In the present case, because of the statutory limitations on this court's authority to conduct jury trials, the defendants' right to a jury trial on each of the trustee's claims shall be considered in turn.[1]

*Granfinanciera* requires a three-part analysis to determine whether there is a right to a jury trial. *See id.* at 43, 109 S.Ct. at 2791. First, the court must compare the action to actions brought in 18th century England before the fusion of the courts of law and equity. *Id.* Secondly, and more importantly, the court must determine whether the remedy sought is legal or equitable in nature. *Id.* Lastly, where the preceding analysis yields the right to a jury trial, the court must ascertain whether Congress may or has assigned resolution of the specific claim to a non-Article III tribunal that does not employ a jury as a factfinder. *Id.*

Application of the *Granfinanciera* factors to the trustee's claims for a turnover and accounting yields the conclusion that the defendants are not entitled to a jury trial on Counts I, II or III of the verified complaint. In Counts I and II, the trustee seeks an accounting and turnover of the truckers' lease/purchase payments allegedly collected by Blue Mack on the debtor's behalf after the petition date. In Count III, the trustee seeks an accounting and turnover of trucks titled in the debtor. In her Brief in Opposition to Defendants' Application for Jury Trial, the trustee concedes defendants' assertion that certain of these vehicles were abandoned to the debtor. Nonetheless, the trustee con-

---

1. Defendants assert that the April Order resolved the portions of Counts I and II seeking an accounting and injunctive relief. Defendants also assert that Count III has been rendered moot by the Trustee's abandonment of the estate's interest in the vehicles at issue. Thus, defendants conclude that only the requests for turnover and costs of suit in Counts I and II and all of Count IV remain for present consideration. Even if the defendants are correct in their assessment of the current status of the trustee's claims, such interpretation would not affect the court's ultimate conclusions regarding their right to a jury trial.

tends that the debtor retained title to some of the trucks which CATCO allegedly liquidated post-petition. The trustee asserts that these payments and remaining vehicles are property of the estate under Code § 541. Thus, the trustee's claims are in essence actions for the return of property of the estate improperly transferred post-petition. A claim for a turnover of post-petition transfers is an action under § 549 of the Code. *See* 11 U.S.C. § 549.[2]

■ Case law is rather sparse on the question of the right to a jury trial on a trustee's § 549 claims. While the Third Circuit has not specifically addressed the issue, the Tenth Circuit, employing the *Granfinanciera* analysis, has instructed that a § 549 turnover action is equitable in nature because it is intended to preserve the bankruptcy estate upon its inception. *In re M & L Business Machine Co.*, 59 F.3d 1078, 1082 (10th Cir.1995). Moreover, the Tenth Circuit reasoned, the bankruptcy court is the appropriate forum for effectuating protection of the estate. *Id.* Accordingly, the Tenth Circuit has held that a defendant has no right to a jury trial on a § 549 equitable claim to recover a post-petition transfer. *Id.; see also Keller v. Blinder (In re Blinder, Robinson & Co.)*, 146 B.R. 28, 31 (Bankr.D.Colo. 1992) (using the *Granfinanciera* test to deny a jury trial on a trustee's § 549 claim, reasoning that the claim is an invocation of a trustee's wholly equitable powers); *Committee of Unsecured Creditors v. Memorial Mission Medical Ctr., Inc. (In re North Carolina*

*Hosp. Ass'n Trust Fund* ), 112 B.R. 759, 762 (E.D.N.C.1990) (holding that there is no right to a jury trial on a § 549 claim, reasoning that § 549 is designed to preserve estate assets, enforcement of which is "clearly equitable" and involves the adjudication of a public right for which Congress may deny the right to a jury trial).[3]

This court agrees with the Tenth Circuit's analysis of § 549 actions. The trustee's primary objective in Counts I, II, and III is to recover and preserve estate assets transferred after the petition date. Accordingly, under the first two *Granfinanciera* factors, this court finds that the defendants are not entitled to a jury trial on the trustee's equitable claims for a turnover and accounting in Counts I, II or III. Consideration of the third *Granfinanciera* factor is therefore unnecessary.[4]

■ .Application of the *Granfinanciera* analysis to Count IV of the verified complaint compels a different result. In Count IV, the trustee seeks damages for Bailey's alleged breach of fiduciary duty. In addition, the trustee seeks compensatory and punitive damages for Bailey's alleged fraud in diverting estate property to third parties with the purpose and effect of hindering, delaying, and defrauding creditors thereby harming the estate and its creditors. In essence, the trustee's claim is for a breach of fiduciary duty effected through Bailey's allegedly fraudulent conduct.

2. Section 549(a) provides:

 Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
 (1) that occurs after the commencement of the case; and
 (2)(A) that is authorized only under section 303(f) or 542 of this title; or
 (B) that is not authorized under this title by the court.
 That the trustee seeks an accounting and injunctive relief, traditionally equitable remedies, in addition to turnover does not alter the analysis.

3. The only case within the Third Circuit's jurisdiction to consider whether § 549 carries the right to a jury trial is *Calaiaro v. Roberts (In re Roberts)*, 126 B.R. 678 (Bankr.W.D.Pa.1991). In

an action by a chapter 7 trustee to recover the value of real property purchased by the debtor through fraudulent conveyances of estate property after the petition date, the *Roberts* court found a right to a jury trial on the trustee's § 549 claim, reasoning that the claim was essentially an action for a fraudulent transfer which had occurred post-petition. *Id.* at 682. Relying on *Granfinanciera*'s analysis of fraudulent conveyance claims, the court noted that fraudulent conveyance actions were traditionally brought at law and that such claims involve private rather than public rights. *Id.* This court is not bound by *Roberts* and declines to follow its reasoning.

4. Because this court has concluded that defendants have no right to a jury trial on Counts I, II, and III, it is unnecessary to address the trustee's assertion that MMAC and Blue Mack waived that right.

■ Under the first *Granfinanciera* factor, actions based solely on breach of fiduciary duty were traditionally actions in equity. *In re Evangelist,* 760 F.2d 27, 29, 31 (1st Cir.1985); *In re Globe Parcel Serv., Inc.,* 75 B.R. 381, 385 n. 9 (Bankr.E.D.Pa.1987). American jurisprudence expanded the strictly equitable view of actions for breach of fiduciary duty by recognizing dual aspects to such suits: the alleged breach of fiduciary obligation, a traditionally equitable matter; and the underlying claim giving rise to the breach, which if legal, carried the right to a jury trial. *See, e.g., DePinto v. Provident Security Life Ins. Co.,* 323 F.2d 826, 837 (9th Cir.1963), *cert. denied,* 376 U.S. 950, 84 S.Ct. 965, 968, 969, 11 L.Ed.2d 969, 970 (1964) (holding that plaintiffs were entitled to a jury trial on claim of breach of fiduciary duty where underlying claim was a common law negligence action). Thus, while a claim of breach of fiduciary duty sounds in equity, the court must consider the nature of the underlying claims without relying on the labels in the pleadings. *Plechner v. Widener College, Inc.,* 569 F.2d 1250, 1257 (3d Cir.1977). Where a claim of breach of fiduciary duty is predicated upon an underlying claim which is legal in nature, the issues of breach and the predicate claim are for a jury. *DePinto,* 323 F.2d at 837; *Halladay v. Verschoor,* 381 F.2d 100, 109 (8th Cir.1967) (accord); *see also Globe Parcel,* 75 B.R. at 385 n. 9 (granting defendants a jury trial on chapter 7 trustee's claims for breach of fiduciary duty, conversion, negligence, and breach of contract, reasoning that while a fiduciary claim sounds in equity, the nature of underlying claims and remedy sought were legal). The court will therefore apply the *Granfinanciera* analysis to the claim underlying the claim of fiduciary breach to determine if Bailey is entitled to a jury trial on Count IV. The court notes that although the trustee phrases her allegations in statutory fraudulent conveyance language, the claim may be appropriately characterized as a common law tort action for conversion or fraud.[5] *See Dairy Queen,* 369 U.S. at 477–78, 82 S.Ct. at 899–900 ("[T]he constitutional right to a jury trial cannot be made to depend upon the choice of words used in the pleadings.")

■ Under the first of the *Granfinanciera* factors, an action for fraud seeking the payment of money damages is an action sounding in tort which would have been heard by an English court of law. *Granfinanciera,* 492 U.S. at 47–48, 109 S.Ct. at 2793–94. Secondly and more importantly, the nature of the relief the trustee seeks from Bailey is clearly legal. While fraud is not distinctively legal or equitable, where a litigant can be made whole only by a remedy available in equity, there is no jury right. *Plechner,* 569 F.2d at 1258. Where, however, an action is for the recovery of a money judgment, it is unquestionably legal. *Dairy Queen,* 369 U.S. at 476, 82 S.Ct. at 899; *see also Billing,* 22 F.3d at 1245 ("Actions sounding in tort 'for damages to a person or property' are . . . generally considered to be actions at law."). Because the trustee has requested only a money judgment from Bailey and does not seek from him any other form of equitable relief under Count IV, a complete remedy for the trustee's claim is available at law.

■ The first two *Granfinanciera* factors yield that Bailey is entitled to a jury trial on the claims of breach of fiduciary duty and fraud. *Granfinanciera* thus requires this court to determine whether Congress may or has statutorily assigned resolution of the fraud claim to a non-Article III tribunal which does not use a jury. Only where a legal cause of action involves "public" rights, ones which are closely intertwined with a federal regulatory program or belong to or exist against the government, is such an assignment constitutionally proper. *Granfinanciera,* 492 U.S. at 53, 54–55, 109 S.Ct. at 2796, 2796–97. Where, however, the claim is one that involves the resolution of state-created private rights brought to augment the bankruptcy estate, such as a tort claim for damages, the claim is a "private right" and Congress may not abrogate the right to a

---

5. Arguably, Count IV may also be characterized, in the *Roberts* vein, as an action to recover a fraudulent conveyance which transpired post-petition. Although this court rejects the *Roberts* characterization, classification of Count IV as either a fraudulent conveyance or as a common law tort claim yields the same result.

jury trial. *Id.* at 55–56 & n. 12, 109 S.Ct. at 2797–98 & n. 12 (citations and quotations omitted).

In the present case, the trustee's tort claim against Bailey for compensatory and punitive damages for his alleged fraud in directing the diversion of estate assets is a private right. The trustee is seeking to augment the estate through a cause of action that exists under state law outside the bankruptcy context. That the fiduciary duty which Bailey allegedly violated arises under Code § 549 does not change the fact that the relief requested is legal in nature, and he is therefore entitled to a jury trial under cases such as *Dairy Queen* and the other cases cited in this section. Thus, under the three-pronged analysis of *Granfinanciera*, Bailey is entitled to a jury trial on the Count IV predicate claim of fraud, and consequently on the claim of breach of fiduciary duty.

## II. Jury Trial in the Bankruptcy Court as to Count IV

### A. Applicability of the 1994 Amendments

 A threshold inquiry regarding this court's authority to conduct the jury trial on Count IV concerns the applicability of § 157(e) of the Bankruptcy Amendments of 1994 which became effective as of October 22, 1994. Pub.L. 103–394, Oct. 22, 1994, 108 Stat. 4106 (28 U.S.C. § 157) (hereinafter the "1994 Amendments"). Section 157(e) provides that bankruptcy judges may conduct jury trials "if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." *Id.* Two issues are thus presented: Do the 1994 Amendments apply to this proceeding and, if they do, has the proper jurisdiction and consent been given to allow this court to try the case. Because the court finds that the 1994 Amendments do not apply, consideration of the second issue is unnecessary.

The Third Circuit has not addressed the applicability of the 1994 Amendments where, as here, a debtor filed its petition for relief before October 22, 1994, the effective date, but filed the relevant adversary proceeding after the effective date. Of the two courts to address that specific issue involving § 157(e), neither has offered a definitive response. *See Sacred Heart Hosp. v. Independence Blue Cross (In re Sacred Heart Hosp.)*, 181 B.R. 195, 204 (Bankr.E.D.Pa.1995) (declining to conduct a jury trial reasoning that resolution of a number of uncertainties and contingencies, including the applicability of § 157(e), militated against it); *After Six, Inc. v. Sharpe's Formal Specialties (In re After Six, Inc.)*, 1995 WL 108209 (Bankr.E.D.Pa. March 7, 1995) (assuming without explanation that § 157(e) applied where the petition was filed in 1993 but the adversary proceeding was filed in November of 1994). Two other courts that have addressed the applicability of the 1994 Amendments where both the underlying bankruptcy case and adversary proceeding were filed prior to October 22, 1994 have instructed that the Amendments apply only to adversary proceedings in cases where the debtor filed its petition after October 22, 1994. *See Chadwick Bay Hotel Assoc., Inc. v. City of Dunkirk (In re Chadwick Bay Hotel Assoc.)*, 178 B.R. 618, 622 n. 5 (Bankr.W.D.N.Y.1995) ("[T]he amended version of § 157(e) does not apply to this case, which was filed in September of 1994."); *Schwinn Plan Comm. v. AFS Cycle & Co. Ltd. (In re Schwinn Bicycle Co.)*, 184 B.R. 945, 949 n. 1 (Bankr.N.D.Ill.1995) (finding § 157(e) inapplicable because the debtor's petition was filed before the effective date of the Amendments). The court agrees with the cases cited above which hold that the petition date determines the applicability of the Amendments. *See* 1994 Amendments, § 702(b) (specifying only five of the 1994 Amendments which are to be retroactively applied and excluding § 157 from that list). Accordingly, the court concludes that the 1994 Amendments are inapplicable to this proceeding where the debtor filed its petition for relief on October 20, 1993, one year before the Amendments' effective date.[6]

### B. Authority of the Bankruptcy Court to Conduct a Jury Trial Under Pre–Amendment Law

 Having found the 1994 Amendments and thus amended § 157(e) inapplica-

---

6. The court notes, however, that a finding of applicability would not authorize this court to conduct the jury trial because the defendants have not consented.

ble, the court must determine if pre-Amendment law permits this court to conduct the jury trial on Count IV. A bankruptcy court has jurisdiction over four kinds of title 11 matters: (1) cases under title 11; (2) proceedings arising under title 11; (3) proceedings arising in title 11; and (4) proceedings related to title 11. 28 U.S.C. § 1334 (1988). Proceedings "arising in" and "arising under" title 11 are core proceedings per 28 U.S.C. § 157(b). *Torkelsen v. Maggio (In re The Guild and Gallery Plus, Inc.)*, 72 F.3d 1171, 1178 (3d Cir.), *reh'g en banc denied* (Feb. 5, 1996). Proceedings which are "related to" title 11 are non-core per 28 U.S.C. § 157(c). *Id.* The court has previously determined that it may conduct a jury trial in a core proceeding in which the case was filed before the effective date of the 1994 Amendments. *See Michaels v. Lomax (In re Skil–Aire Corp.)*, 142 B.R. 692, 698 (Bankr.D.N.J.1992) (holding that the bankruptcy court has constitutional and implied statutory authority to conduct jury trials in core proceedings); *see also Dailey v. First Peoples Bank of New Jersey*, 76 B.R. 963 (D.N.J.1987) (same). The Third Circuit has made clear, however, that a bankruptcy court may not conduct a jury trial in a non-core proceeding without the consent of the parties. *Beard v. Braunstein*, 914 F.2d 434, 443 (3d Cir.1990). A clarification of the core/non-core distinction is therefore in order.

Congress has provided a non-exhaustive list of core proceedings in 28 U.S.C. § 157(b)(2)(A)–(O). Explaining the core/non-core distinction, the Third Circuit has consistently instructed that a core proceeding is one that invokes a substantive right provided by title 11 or one that, by its nature, could arise only in the context of a bankruptcy case. *See, e.g., Guild*, 72 F.3d at 1178; *Phar–Mor v. Coopers & Lybrand*, 22 F.3d 1228, 1234 (3d Cir.1994). A non-core proceeding, by contrast, is one that does not invoke a substantive right conferred by title 11 and thus may arise even outside the bankruptcy context. *Guild*, 72 F.3d at 1178. While such a right may be related to the bankruptcy case by virtue of its potential effect on the case, it remains a "related to" non-core proceeding under § 157(c). *Id.*

The Third Circuit's clearly delineated distinction between core and non-core matters compels the conclusion that the trustee's Count IV claims of breach of fiduciary duty and fraud are core. Although the trustee's right to assert these claims is not directly conferred by any substantive provision of title 11, the claims, by their nature, can arise only within the context of the debtor's bankruptcy case because the gravamen of the allegations is an intentional violation of Bankruptcy Code § 549. While breach of fiduciary duty and fraud are cognizable state law actions based on an alleged relationship that exists apart from the debtor's bankruptcy, the involvement of state-created rights in a bankruptcy proceeding does not, *ipso facto*, compel the conclusion that the claims presented are non-core. *Allard v. Benjamin (In re DeLorean Motor Co.)*, 49 B.R. 900, 909 (Bankr.E.D.Mich.1985) (quotation omitted). Moreover, it cannot be denied that a breach of fiduciary duty by an officer of a debtor-in-possession directly impacts on the debtor's ability to reorganize and pay creditors, thus implicating the court's core jurisdiction over matters clearly affecting the estate. *Id.* at 907. The court holds that an action against a corporate officer for orchestrating a § 549 violation is core because it directly impacts the estate and could only arise in the context of a § 549 action, which is itself an "arising under" core matter. Accordingly, the court concludes that Count IV of the trustee's verified complaint alleging breach of fiduciary duty and fraud presents a core matter.

## C. Proper Forum for Adjudicating the Adversary Proceeding

The court clearly has the authority to adjudicate the equitable claims of Counts I, II, and III. However, whether the court may conduct the jury trial to which Bailey is entitled on Count IV must be revisited in light of the 1994 Amendments. Though not applicable in the instant case, § 157(e) of the 1994 Amendments provides persuasive evidence of Congress' intent regarding the appropriate forum for conducting jury trials in core proceedings. *See Chemical Waste Management, Inc. v. Armstrong World Indus.*, 669 F.Supp. 1285, 1291 (E.D.Pa.1987) (noting that a subsequent stat-

utory enactment provides courts with guidance in construing an earlier statute). Section 157(e) authorizes bankruptcy courts to conduct jury trials in both core and non-core proceedings where the district court has so authorized and the parties have consented. *See* 1994 Amendments, § 157(e). Thus, although the court's ruling in *Skil–Aire* and Judge Gerry's ruling in *Dailey* authorizing bankruptcy judges to conduct jury trials in core proceedings in cases filed prior to the effective date of the 1994 Amendments have never been overruled, the court believes that the district court would accord great weight to § 157(e) and require withdrawal of the reference to the bankruptcy court on Count IV because Bailey has not consented to this court's conducting the jury trial.

Moreover, the interests of efficiency and expediency militate in favor of presenting both the equitable claims of Counts I, II and III and the legal claim of Count IV to a judge and jury in the district court in a single proceeding. *See Torcise v. Community Bank of Homestead*, 131 B.R. 503, 508 (S.D.Fla.1991) (withdrawing reference to bankruptcy court with regard to an equitable claim where it involved issues of fact common to legal claim on which party was entitled to jury trial). The court will therefore preside over this adversary proceeding and adjudicate discovery disputes and motions only until such time as the case is ready for trial. *See Keene Corp. v. Williams Bailey & Wesner, LLP* (*In re Keene Corp.*), 182 B.R. 379, 385 (S.D.N.Y.1995) (denying on ripeness grounds motion to withdraw the reference, reasoning that while an adversary proceeding carrying the right to a jury trial is in its initial stages, the bankruptcy judge "is fully equipped with the tools to proceed with [the] matter" until such time as the issues are ripe for submission to the jury); *Hayes v. Royala, Inc.*, 180 B.R. 476, 477 (E.D.Tex.1995) (explaining that the inability of a bankruptcy judge to preside over a jury trial absent the parties' consent does not require withdrawal of the reference to the bankruptcy court until it is clear that the issues are ready for consideration by a jury).

Should the trustee disagree with the court's conclusion regarding the appropriate tribunal for trial of the claims, she should file a motion in the district court for leave to file an interlocutory appeal pursuant to Fed. R.Bankr.P. 8001(b).

### CONCLUSION

For the foregoing reasons, the court finds that defendants are not entitled to a jury trial on Counts I, II, and III of the trustee's verified complaint. Bailey, however, is entitled to a jury trial on Count IV. In light of the persuasive force of the 1994 Amendments and in the interest of efficiency, the court will direct the defendants to file a motion in the district court to withdraw the reference with regard to all counts of this adversary proceeding when the matter is ready for trial. However, this court will preside over the proceeding until such time as the case is ready for trial.

The attorney for the defendants shall submit an order within seven days under D.N.J.Bankr.Ct.R. 4(c).